## STATE v. REDMAN EARL CRISP.

(Filed 19 September, 1956.)

**1. Homicide § 16—**

> An intentional killing with a deadly weapon raises the presumptions that the killing was unlawful and that it was done with malice.

**2. Homicide § 5—**

> Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation.

**3. Homicide § 25—**

> Where the State's evidence tends to show an intentional killing with a deadly weapon, it is sufficient to be submitted to the jury on the charge of murder in the second degree, notwithstanding defendant's evidence in conflict tending to show that the shooting was by accident or misadventure.

**4. Same: Criminal Law § 52a(2)—**

> Where defendant contends that though the evidence may be sufficient to be submitted to the jury as to the offense of manslaughter, it is insufficient to support a verdict of guilty of murder in the second degree, defendant should request instructions that the jury could not return a verdict for any higher offense than manslaughter, and motion for judgment of nonsuit is not the proper way to present this contention.

**5. Criminal Law § 42e—**

> The exclusion of testimony of a statement inconsistent with the testimony of a witness, offered for the purpose of impeaching the credibility of the witness, will not be held for prejudicial error when it is not made to appear whether the witness or another made the inconsistent statement, and defendant does not again proffer the impeaching testimony after such other person had testified for the State.

**6. Criminal Law § 50f—**

> While counsel are entitled to argue to the jury the whole case as well of law as of fact, and are to be given wide latitude in making their arguments to the jury, the court properly restrains counsel from arguing to the jury

a point of law which, by admission of counsel, is entirely irrelevant to the case.

**7. Homiicide § 27b—**

Where the State offers evidence of an intentional killing with a deadly weapon, an instruction that the burden is on defendant to establish matters in mitigation or excuse to the satisfaction of the jury unless they arise out of the evidence against him, *is held* without error, defendant being entitled to show matters in mitigation or excuse from the State's evidence, if he can, as well as from that offered by himself.

**8. Homicide § 27e—**

The court's instruction as to the legal provocation which will reduce murder in the second degree, established by proof of an intentional killing with a deadly weapon, to manslaughter, *held* sufficiently full.

**9. Same—**

The court's definition of the terms unlawful act, culpable negligence and proximate cause as they relate to the crime of manslaughter *held* without error in the case, the charge not being objectionable on the ground that the jury were left free to consider ordinary rather than culpable negligence in determining defendant's defense of killing by accident or misadventure.

JOHNSON, J., not sitting.

DEVIN and RODMAN, JJ., took no part in the consideration or decision of this case.

APPEAL by defendant from *Burgwyn, Emergency Judge,* January Term 1956 of BRUNSWICK.

Criminal prosecution on a bill of indictment charging the defendant with murder in the first degree of James A. Ferreri.

At the outset of the trial the solicitor for the State announced in open court that he would not ask for a verdict of guilty of murder in the first degree, but would ask for a verdict of guilty of murder in the second degree or manslaughter, as the facts might appear.

The defendant pleaded Not Guilty. Verdict: Guilty of murder in the second degree.

From judgment of imprisonment in the State's prison, the defendant appeals.

*William B. Rodman, Jr., Attorney General, and Harry W. McGalliard, Assistant Attorney General, for the State.*

*Aaron Goldberg, Rountree & Rountree, and S. B. Frink for Defendant, Appellant.*

PARKER, J. At the close of the State's evidence the defendant made a motion for judgment of nonsuit, which the court overruled, and renewed such motion at the end of all the evidence, which the court

refused. The defendant assigns this as error. However, he does not contend under this assignment of error that the court should have non-suited the State, but that the court erred in not limiting the jury's consideration of the evidence to the offense of manslaughter alone.

The State's evidence presented these facts: On the night of 15 March 1955 James A. Ferreri, a 17 year old boy, Robert Hopper and Michael John Pollack, two 16 year old boys, were hitchhiking through North Carolina to Florida. A man gave them a ride in his car from Wilmington to the junction of Highways 74-76 and 17, which is about five miles south of Wilmington in Brunswick County. Here these three boys got out of the car about 11:30 p.m. They had no money, and no weapons, but did have some baggage. On Highway 17 at or near the junction there is a motel on one side of the highway, and on the other side is the residence of the defendant and an automobile garage and showroom and used car lot belonging to the defendant. In the used car lot the defendant had a number of used cars. Ferreri and Hopper went on the used car lot to find an automobile in which to spend the night: Pollack remained on the highway to see if they could get another ride. The door of the first car Ferreri and Hopper came to was open. They slammed its door, and walked down a couple of rows of cars. They opened the fifth or sixth car they came to, and put their baggage in the front seat. Ferreri called Pollack, saying "Mickey, come on down, we have found a place we can stay for the night." All three got in the back seat. Ferreri was on the left behind the steering wheel.

After they had been in the car a short time, they saw two men walking through the used car lot, and searching the cars by flashing a light into each car as they passed. When these two men reached the car the boys were in, one of them, D. N. Parker, said to the other, the defendant, "there are some boxes in the front seat of this car." The defendant flashed a light in the back seat saying "there they are," and began beating on the car's left door saying "open the door." Ferreri got up, unlatched and opened the door and sat back on the seat. The defendant had a flashlight in one hand and a pistol in the other. The defendant began asking questions as to what they were doing in the car, were they trying to steal it, who they were, etc. Ferreri had his hands up with nothing in them and was trying to answer the questions. The defendant pushed his pistol in Ferreri's face, who fell to the back of the seat, turned his head and covered his face. The defendant fired his pistol, and the bullet entered the back of Ferreri's head, went through his brain and skull, came out of his forehead and imbedded itself in the back of the car. Ferreri died as a result of this penetrating wound.

The boys had nothing in their hands at the time of the shooting and had made no threatening motions, nor used any menacing language. No one was touching the defendant, when he fired the pistol. When the

defendant fired, he was standing on the ground leaning in the car, and at the time the pistol was 2½ or 3 feet from Ferreri.

The defendant's evidence presented these facts: D. N. Parker, who worked at the motel, telephoned the defendant about 12:45 a.m. that someone was tampering with his automobiles on the used car lot. The telephone call waked the defendant from sleep. He put pants and a coat over his pajamas, shoes on his feet, picked up a flashlight and pistol, and left his home to go to the used car lot. Parker joined him on the way. They found the three boys in the back seat of one of the defendant's cars. As they approached the car, its door came open. The defendant flashed a light in the car on the boys, and asked what they were doing in the car. No one answered. He asked, why they didn't get out, get in the road and move off. The defendant was standing by the car. Ferreri drew back to hit the defendant. When he did, the defendant drew his pistol from his pocket, and fired it "across the ground" to scare him. When the pistol fired, Ferreri grabbed him with both hands, and pulled him down on his chest on the floorboards of the car. At that time this is the defendant's testimony as to what occurred: "What happened then was that the gun exploded—in what direction I don't know. I did not point the gun at him. I never shot at anybody or aimed at anybody. I did not shoot him." Ferreri released the defendant when the pistol fired. Only two shots were fired. On cross-examination the defendant testified Ferreri had a big lug wrench in his hand.

The defendant states in his brief: "The defendant denied firing the pistol, which resulted in the death of James Ferreri, claiming at all times it was an accidental shooting."

The defendant offered in evidence a torn pajama shirt, which he and his wife testified was not torn when he left home, and which he testified Ferreri tore when he pulled him in the car.

The evidence, considered in the light most favorable to the State, shows that the defendant intentionally killed James A. Ferreri with a deadly weapon, to-wit a pistol, by shooting him in the back of his head. An intentional killing with a deadly weapon raises two presumptions against the killer: first, that the killing was unlawful, and second, that it was done with malice. *S. v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322; *S. v. Howell,* 239 N.C. 78, 79 S.E. 2d 235; *S. v. Benson,* 183 N.C. 795, 111 S.E. 869. And murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. *S. v. Street,* 241 N.C. 689, 86 S.E. 2d 277; *S. v. Benson, supra.*

The trial court correctly submitted to the jury the question as to whether or not the defendant was guilty of murder in the second degree, and the State's evidence is amply sufficient to support the verdict.

The defendant admits in his brief the State's evidence, if believed by the jury, made out a case of manslaughter. A motion for judgment of nonsuit is not the proper way to raise the defendant's contention. *S. v. Johnson,* 227 N.C. 587, 42 S.E. 2d 685; *S. v. Jones,* 222 N.C. 37, 21 S.E. 2d 812. If the defendant had properly raised his contention by requesting the judge to instruct the jury that they could not return a verdict for any higher offense than manslaughter, *S. v. Gregory,* 203 N.C. 528, 166 S.E. 387, his contention is without merit.

The State's witness Hopper testified that he and Pollack were in the back seat of the car, when Ferreri was shot. The State rested its case without calling Pollack as a witness. For purposes of impeachment because of a prior inconsistent statement the defendant asked his witness Patrolman Seth Thomas "what those boys told you with reference to where they were standing at the time he shot." Upon objection by the State the defendant was not permitted to answer in the presence of the jury, but was permitted to whisper his answer to the court reporter, which was as follows: "The boys testified to me that they were standing at the right front, or the left front, of the automobile, facing into the right side of that car approximately 18 feet away from the one in which the shooting took place. Both were present and both were hearing what was said." The court stated it excluded the evidence, because the witness could not tell which witness made the statement. Immediately prior to the asking of this question defendant's counsel had asked the witness Thomas several questions as to what Hopper or Pollack said to him, when Thomas could not say which one made the statement. The judge stated he thought the evidence was inadmsisible for the reason that the witness could not say which boy made the statement, and then asked the solicitor for the State this question: "If I understand it correctly, you intend to put the other one on the stand, do you sir?" Solicitor Burney replied "Yes sir." Whereupon counsel for the defendant who was examining Thomas said: "I would like to withdraw this witness, and I would like to ask the court that I be allowed to recall him to testify if Pollack is not put on. I would like to recall him for the purpose of getting it in the record if Pollack is not put on by the State." The court replied: "Of course you can." The defendant assigns the exclusion of this evidence as error.

In rebuttal the State called Pollack as a witness, and his testimony was Hopper and he were in the back seat of the car when Ferreri was shot. When the State rested after its rebuttal evidence, the defendant recalled Patrolman Thomas to the stand. Thomas was permitted to testify as follows: One or the other of the boys, as to which one told me I don't know, told me that the defendant was standing about 18 feet from the car in which Ferreri was and on its right hand side, when he shot Ferreri. It seems plain that, if defendant's counsel had asked

Thomas when he was recalled to the stand, what one of the boys said in the presence of the other as to where they were when Ferreri was shot, the judge would have admitted it. For some reason defendant's counsel did not ask such a question, which he had asked Thomas before. Such being the facts before us, we hold that the exclusion of this evidence is not sufficient to justify a new trial.

After the argument to the jury of counsel for the private prosecution, the judge dismissed the jury from the courtroom, and made this statement to defendant's counsel: "Gentlemen, inviting your attention to the arguments in this case, I understand from the line of questioning by defendant's counsel that the defendant contends, and contends only, that this death of the deceased was caused by accident or misadventure. You do not in any-wise plead self-defense?" One of defendant's counsel replied: "That is right." One of defendant's counsel in his argument to the jury said: "Let me read to you the law about self-defense." The judge said: "No. I am going to charge the jury there is only one defense to this." Counsel for defendant said: "The object of this is to answer Mr. Brown" (counsel for private prosecution) "when he said we changed our defense. I would like the record to show that I wanted to read from S. v. Frizzelle, 243 N.C. 49, 89 S.E. 2d 725." The judge said: "The court would have permitted this argument had not counsel stated in open court that this killing occurred through accident and not through self-defense." The defendant states in his brief that the defendant has contended at all times that the shooting was accidental. The defendant assigns as error the refusal of the trial court to permit his counsel in his argument to the jury to read from the case of S. v. Frizzelle, supra.

The decision in the Frizzelle Case discusses one question of law: the right of self-defense. By reason of the statement of defendant's counsel in open court to the presiding judge and the statement in his brief, the law of self-defense was irrelevant to the case, and had no application to the facts.

G.S. 84-14 provides that "in jury trials the whole case as well of law as of fact may be argued to the jury." Counsel have wide latitude in making their arguments to the jury. S. v. Smith, 240 N.C. 631, 83 S.E. 2d 656; S. v. Bowen, 230 N.C. 710, 55 S.E. 2d 466. In S. v. Bovender, 233 N.C. 683, 65 S.E. 2d 323, it is said: "The right of counsel to state in his argument to the jury what he conceives the law of the case to be has been upheld in numerous decisions of this Court."

Counsel did not conceive the right of self-defense to be the law of the case. The injection of the law of self-defense could only lead to confusion in the minds of the jury. Broad and comprehensive as the provisions of G.S. 84-14 are, they do not permit counsel to read to the jury decisions discussing principles of law which are irrelevant to the case

and have no application to the facts in evidence. *Conn v. R. R.,* 201 N.C. 157, 159 S.E. 331, 77 A.L.R. 641; *S. v. Buchanan,* 216 N.C. 709, 6 S.E. 2d 521; *Tindall v. State,* 99 Fla. 1132, 128 So. 494; *Key v. Carolina & N. W. Ry. Co.,* 150 S.C. 29, 147 S.E. 625; *People v. Lapara,* 181 Cal. 66, 183 P. 545; 23 C.J.S., Crim. Law, Sec. 1110, Argument on Law of Case. The court did not err in preventing defendant's counsel from reading the *Frizzelle Case* to the jury.

The court instructed the jury that when it is proven or admitted that the defendant intentionally killed the deceased with a deadly weapon, the law raises two presumptions against him: first, that the killing was unlawful, and second, that it was done with malice, and an unlawful killing with malice is murder in the second degree. The law then casts upon the defendant the burden of proving to the satisfaction of the jury—not by the greater weight of the evidence nor beyond a reasonable doubt, but simply to the satisfaction of the jury—the legal provocation that will rob the crime of malice and thus reduce it to manslaughter, or that will excuse it altogether. The court then charged as follows: "The burden is on the defendant only to establish such facts to the satisfaction of the jury, unless they arise out of the evidence against him." The defendant assigns as error the last nine words only of the above quoted sentence.

In *S. v. Quick,* 150 N.C. 820, 64 S.E. 168, this Court said: "In all indictments for homicide, where the intentional killing is established or admitted, the law presumes malice from the use of a deadly weapon, and the defendant is guilty of murder (now in second degree), unless he can satisfy the jury of the truth of facts which justify his act or mitigate it to manslaughter. The burden is on the defendant to establish such facts to the satisfaction of the jury, unless they arise out of the evidence against him."

The facts and circumstances upon which the defendant relies to show mitigation or excuse or justification, he can show, if he can, from the whole evidence, as well that offered by the State, as that offered by himself. *S. v. Bright,* 215 N.C. 537, 2 S.E. 2d 541; *S. v. Gregory, supra; S. v. Wilcox,* 118 N.C. 1131, 23 S.E. 928.

This assignment of error is without merit. The court used the exact words set forth by this Court in the *Quick Case.*

The defendant assigns as error that part of the charge which refers to the legal provocation which will reduce murder in the second degree to manslaughter. The words excepted to are almost a literal use of the words set forth in *S. v. Benson, supra,* on the subject. Under this assignment of error the defendant contends that the charge was inadequate in that the court did not instruct the jury to consider all the facts, particularly as they appeared to the defendant, "in determining whether there was sufficient lawful provocation to set the defendant's mind into

a *brevis furor* of unsettling passion so as to reduce the homicide from murder in the second degree to at least manslaughter." The court did instruct the jury substantially on this subject, which instructions cover more than a page in the Record, immediately before the part assigned as error, and a great part of this part of the charge is taken verbatim from *S. v. Merrick,* 171 N.C. 788, 88 S.E. 501. This assignment of error is overruled.

The defendant further assigns as error that the court failed to declare, explain and define the terms unlawful act and culpable negligence as they relate to the crime of manslaughter, as required by G.S. 1-180. Without setting forth all that the court charged in respect to manslaughter and to a killing by misadventure or accident, the court charged "a homicide by misadventure is the accidental killing of another when the slayer is doing a lawful act unaccompanied by any criminal, culpable or reckless conduct . . . It would be unlawful in the meaning of this rule, an action which justice says must have been intentionally wrong in itself, that is, it must be brought within the definition of criminal or culpable negligence." The court further charged that to make out a case of culpable negligence it is necessary for the State to show beyond a reasonable doubt a higher degree of negligence than is required to establish negligence in civil actions, and that proximate cause is an essential element of culpable negligence. The court also charged that if the jury found beyond a reasonable doubt from the evidence that the defendant killed the deceased "while in the commission of some unlawful act on part of himself, or that his death resulted from culpable, or criminal negligence on the part of the defendant, and that he was acting in a heedless, reckless manner regardless of the consequences of his act, and the death of the deceased ensued, it would be your duty to find him guilty of involuntary manslaughter. However, if you are satisfied from the testimony in the case, not beyond a reasonable doubt, not by the greater weight of the testimony, but satisfied from the evidence in the case which has been introduced by the defendant and by the State, that the death of the deceased was due to an accident as that has been explained to you to mean, then it would be your duty to find the defendant not guilty." Unlike the charge in *S. v. Kluckhohn,* 243 N.C. 306, 90 S.E. 2d 768, the jury was not left "free to consider ordinary rather than culpable negligence as sufficient to make unavailing to the defendant the plea of accidental killing." This assignment of error is overruled.

The other two assignments of error as to the charge refer to the alleged failure of the court to declare, explain and properly define the law relating to homicide by misadventure or accident, and to the law relating to the right of the defendant to use a pistol in the lawful defense of his property on his own premises. A careful reading of the

22½ pages of the charge shows that these assignments of error cannot be sustained.

The case was fairly presented to the jury by the learned judge in his charge. No prejudicial error is made to appear.

No error.

JOHNSON, J., not sitting.

DEVIN and RODMAN, JJ., took no part in the consideration or decision of this case.