STATE OF NORTH CAROLINA v. JOHNNY McMORRIS

No. 39

(Filed 17 June 1976)

1. **Burglary and Unlawful Breakings § 8; Criminal Law §§ 102, 138—counsel's statement of punishment to jury — refusal error**

   Defendant in a first degree burglary case is entitled to a new trial where the court denied defense counsel's motion to be allowed to inform the jury that conviction would necessarily result in the imposition of a life sentence, since such denial was an unwarranted and prejudicial restriction on defendant's right to argue fully the "whole case" as permitted by G.S. 84-14.

2. **Criminal Law §§ 102, 138— counsel's statement of punishment to jury — impermissible argument**

   A defendant should not be permitted to argue that because of the severity of the statutory punishment the jury ought to acquit, to queston the wisdom or appropriateness of the punishment, or to state the punishment provisions incorrectly; nor should either the State or the defendant be allowed to speculate upon the outcome of possible appeals, paroles, executive commutations or pardons.

3. **Criminal Law §§ 161, 166— assignment of error to signing of judgment — no argument in brief — nothing presented for review**

   In a first degree burglary and second degree rape case where defendant assigned as error the signing of the judgment in each case, but no argument was presented in defendant's brief on this point, neither the assignment of error nor the appeal itself presented anything for review. N. C. Rules of Appellate Procedure, Rule 28.

APPEAL of right pursuant to General Statute 7A-27(a) from a judgment in 75-CR-16882 sentencing defendant to life imprisonment upon conviction for burglary in the first degree. Defendant was tried before *Ferrell, J.*, at the October 27, 1975 Criminal Session of BUNCOMBE County Superior Court. Defendant was also convicted of second degree rape in 75-CR-16881 and sentenced to 16-20 years imprisonment to be served concurrently with the life sentence for burglary. We allowed defendant's motion to by-pass the Court of Appeals on the rape conviction.

*Rufus L. Edmisten, Attorney General, by James Wallace, Jr., Associate Attorney, for the State.*

*Peter L. Roda, Public Defender for the 28th Judicial District, for the defendant.*

EXUM, Justice.

I

[1] After the close of the evidence, defense counsel, in the jury's absence, moved to be allowed to inform the jury that conviction of burglary in the first degree would necessarily result in the imposition of a life sentence. The motion was denied by the trial court. The State and defendant stipulate that "the fact that a conviction of first degree burglary carried a mandatory life sentence was not mentioned by anyone in his argument." Defendant assigns as error the denial of this motion. This assignment is sustained.

We begin discussion with the last sentence of General Statute 84-14: "In jury trials the whole case as well of law as of fact may be argued to the jury." The origins of this provision are obscure but in *State v. Miller*, 75 N.C. 73, 74 (1876) Justice Reade said:

> "Some twenty five years ago a circuit judge restrained a lawyer from arguing the *law* to the *jury,* suggesting that the argument of the law ought to be addressed to the court, as the jury had to take the law from the court. Umbrage was taken at that, and the Legislature passed an act allowing counsel to argue both the law and the facts to the jury."

The law which this provision allows to be argued must of course be the law applicable to the facts of the case. *State v. Crisp,* 244 N.C. 407, 94 S.E. 2d 402 (1956). The whole *corpus juris* is not fair game.

In a real sense the sanction prescribed for criminal behavior is part of the law of the case. Indeed, the dispute in jurisprudential circles is whether the sanction for its violation is the *only* thing which distinguishes law from custom. *See* H. L. A. Hart, The Concept of Law, Chapters 1 and 2 (1961).

It is, consequently, permissible for a criminal defendant in argument to inform the jury of the statutory punishment

provided for the crime for which he is being tried. In serious felony cases, at least, such information serves the salutary purpose of impressing upon the jury the gravity of its duty. It is proper for defendant to advise the jury of the possible consequence of imprisonment following conviction to encourage the jury to give the matter its close attention and to decide it only after due and careful consideration. "Counsel may, in his argument to the jury, in any case, read or state to the jury a statute or other rule of law relevant to such case, including the statutory provision fixing the punishment for the offense charged. G.S. 84-14; *State v. Crisp*, 244 N.C. 407, 94 S.E. 2d 402, 67 A.L.R. 2d 236; Annot. 67 A.L.R. 2d 245." *State v. Britt*, 285 N.C. 256, 273, 204 S.E. 2d 817, 829 (1974). See also General Statute 15-176.9 which provides that:

> "When a case will be submitted to a jury on a charge for which the penalty involves the possibility of the loss of a motor vehicle driver's license, either party in its argument to the jury may indicate the consequences of a verdict of guilty of that charge."

This general rule applies with even greater force to a case, such as this, where the consequence of conviction is a mandatory life sentence. Denial of permission to counsel to so inform the jury was an unwarranted and prejudicial restriction on defendant's right to argue fully the "whole case" as permitted by General Statute 84-14. For this error defendant is entitled to a new trial in 75-CR-16882, the burglary case.

[2] This does not mean that a defendant should be permitted to argue that because of the severity of the statutory punishment the jury ought to acquit; to question the wisdom or appropriateness of the punishment; or to state the punishment provisions incorrectly. *State v. Britt, supra; State v. Dillard*, 285 N.C. 72, 203 S.E. 2d 6 (1974). Nor should either the State or the defendant be allowed to speculate upon the outcome of possible appeals, paroles, executive commutations or pardons. *State v. Little*, 228 N.C. 417, 45 S.E. 2d 542 (1947).

Recently we held it was not error to refuse to permit defendant "an opportunity to *argue* to the jury the *question* of punishment for [first degree] burglary." *State v. Hedrick*, 289 N.C. 232, 221 S.E. 2d 350 (1976). In *Hedrick*, however, as carefully noted in the opinion, the record before us did not put defendant's point so clearly as the record we now consider does.

Hedrick's contention was that since the district attorney had told the jury that first degree burglary was no longer punishable by death, he should be allowed "to argue the question of punishment" as a matter of fairness and to avoid any possible juror confusion on the point. The record in *Hedrick*, though, disclosed no request by defendant to state simply that a life sentence would be imposed, no ruling by the trial court, no statement on the point by the district attorney and no evidence of any jury confusion. Neither was General Statute 84-14, upon which we base this decision, cited to the court or relied on by Hedrick. The Court in *Hedrick* understood defendant's position to be that he should be permitted to argue that the mandatory sentence was unduly severe or inappropriate.

In *State v. Rhodes*, 275 N.C. 584, 591, 169 S.E. 2d 846, 851 (1969) this Court expressly disapproved a statement in *State v. Garner*, 129 N.C. 536, 40 S.E. 6 (1901) to the effect that juries in noncapital cases were entitled to be informed of the punishment prescribed for the crime charged. *Garner*, *Rhodes* and the authorities upon which *Rhodes* relied, however, dealt with statements regarding punishment made by trial judges in their jury instructions. These cases were not concerned with jury arguments by counsel nor General Statute 84-14. The carefully considered and well documented opinion by Justice, now Chief Justice, Sharp in *State v. Rhodes, supra,* represents this Court's most comprehensive discussion of the trial judge's duty relative to informing the jury regarding possible punishments in noncapital cases.

In capital cases the right of the State or the defendant to inform the jury of the consequences of a verdict of guilty is prescribed by General Statute 15-176.3 which reads:

"When a jury is being selected for a case in which the defendant is indicted for a crime for which the penalty is a sentence of death, the court, the defense, or the State may inform any person called to serve as a potential juror that the death penalty will be imposed upon the return of a verdict of guilty of that crime and may inquire of any person called to serve as a potential juror whether that person understands the consequences of a verdict of guilty of that crime";

and General Statute 15-176.5 which reads:

> "When a case will be submitted to a jury on a charge for
> which the penalty is a sentence of death, either party in
> its argument to the jury may indicate the consequences
> of a verdict of guilty of that charge."

The judge's duty in capital cases is now prescribed by
General Statute 15-176.4 and *State v. Britt, supra.* The statute
reads:

> "When a defendant is indicted for a crime for which the
> penalty is a sentence of death, the court, upon request by
> either party, shall instruct the jury that the death penalty
> will be imposed upon the return of a verdict of guilty of
> that crime."

We held in *State v. Britt, supra* at 272, 204 S.E. 2d at 828:

> "Thus in a capital case if the jury appears to be confused
> or uncertain, the trial judge should act to alleviate such
> uncertainty or confusion. Specifically, if the trial judge
> observes that the jury is confused or uncertain as to
> whether one of its permissive verdicts would result in a
> mandatory death sentence, in our opinion, sufficient com-
> pelling reason exists to justify his informing the jury of
> the consequence of their possible verdicts."

Before the effective date of General Statute 15-176.4 (July
1, 1974) and before *Britt,* this Court had said in *State v. Wad-
dell,* 282 N.C. 431, 194 S.E. 2d 19 (1973), that jury instruc-
tions on punishment in capital cases should not thereafter be
given since the punishment of death would thereafter be manda-
tory rather than a matter for jury determination. After *Wad-
dell* the Court soon held that it was not error for the trial
judge to refuse to inform the jury that a mandatory sentence
of death would result from a conviction of the then capital
crime of rape or first degree burglary. *State v. Henderson,* 285
N.C. 1, 203 S.E. 2d 10 (1974). General Statute 15-176.4 and
our holding in *Britt* modified the Court's statement in *Waddell*
and its holding in *Henderson.*

The legislature has not yet spoken regarding the judge's
duty to inform the jury of the mandatory life sentence in those
noncapital cases where it must be imposed. The references in
*Rhodes* to "noncapital" cases were to cases where punishment

was left to the trial judge's discretion. There were no crimes for which the punishment was a mandatory life sentence at the time *Rhodes* was decided. *State v. Washington,* 283 N.C. 175, 195 S.E. 2d 534 (1973) cert. denied 414 U.S. 1132, furthermore, was a rape case in which both the crime and the trial occurred after the United States Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238 (1972) and before this Court's decision in *Waddell. Washington* held that it was not error to fail to instruct the jury that life imprisonment was the punishment for rape when the trial court did, incorrectly, instruct that upon a verdict of guilty the defendant would be sentenced to death. Whether the trial judge should tell the jury in a proper case that upon conviction a mandatory life sentence will be imposed is still an open question. It could hardly be error to do so.

## II

[3] Defendant assigns as error the signing of the judgment in each case. No argument is presented in the brief on this point other than a reiteration of prior arguments and a submission to the Court to review the record and determine whether error has been committed.

Under former practice an appeal itself or an exception to the signing of the judgment presented for review errors committed on the face of the record proper. 1 Strong's North Carolina Index 3rd, Appeal and Error § 26 (1976). In a criminal case the record proper then consisted of the organization of the court, the indictment, plea, verdict and judgment. In rare cases in the exercise of its general supervisory powers the Court has considered the sufficiency of the evidence to support the verdict, when there was a total lack of proof of an element of the crime charged. *State v. Cox,* 281 N.C. 131, 187 S.E. 2d 785 (1972).

The procedure is somewhat different for cases in which notice of appeal was given on and after July 1, 1975, because the new North Carolina Rules of Appellate Procedure, 287 N.C. 671 (1975), apply. Rule 9 abandons the former distinction made between the "record proper" and the "settled case on appeal." Instead, the single concept of "record on appeal" is used, the composition of which is governed by Rule 9(b). Rule 28 specifies that briefs are "to define clearly the questions presented to the reviewing court and to present the arguments and au-

thorities upon which the parties rely in support of their respective positions thereon. Review is limited to questions so presented . . . . " Although review is also normally limited to questions which are based on exceptions and assignments of error found in the record on appeal the proviso to Rule 10(a) allows review of questions formerly presented by the appeal itself or an exception to the judgment (such as the sufficiency of the indictment, subject matter jurisdiction, and regularity of the judgment) "when such question is properly raised in the brief." General Statutes 15-173 and 15-173.1 allow the question of the sufficiency of the evidence to be argued on appeal even in the absence of appropriate exceptions in the record or motions in the trial court. This does not negate the requirement of Rule 28 that even this question must be presented and argued in the brief in order to obtain appellate review of it.

In this case defendant makes no argument in his brief specifically related to this assignment and cites no authority for his proposition that the court erred in signing the judgment. Neither this assignment of error nor the appeal itself, therefore, presents anything for review. Since, however, defendant was obviously relying on our former rules we have considered what used to be called the "record proper" and find it to be regular in all respects. This assignment of error is overruled.

For reasons set out earlier defendant is entitled to a new trial on the first degree burglary charge. There is no error in the second degree rape conviction.

In 75-CR-16882 (burglary)—NEW TRIAL.

In 75-CR-16881 (rape)—NO ERROR.