STATE OF NORTH CAROLINA v. JOHN JACOB BANKS

No. 628A87

(Filed 28 July 1988)

**1. Criminal Law § 72; Rape and Allied Offenses § 4— defendant's age—lay opinion testimony**

In a prosecution for first degree sexual offenses and taking indecent liberties with minors, the trial court did not err in allowing a deputy to testify that in his opinion defendant appeared to be between 29 and 30 years of age since it was not necessary for the State to prove defendant's exact age in order to convict him of any of the crimes charged, and the deputy had ample opportunity to observe defendant during the booking process and in the courtroom. N.C.G.S. § 8C-1, Rule 701 (1986); N.C.G.S. §§ 14-27.4(a)(1) (1986) and 14-202.1(a) (1986).

**2. Criminal Law § 75.7— routine booking questions—date of birth—element of crimes—Miranda warnings unnecessary**

Miranda warnings were not required as a prerequisite to the admissibility of information as to defendant's birthdate routinely obtained during the booking process even though such information incidentally helped establish an essential element of sexual offense and indecent liberties charges for which defendant was booked.

**3. Bills of Discovery § 6— defendant's birthdate—failure to disclose statement—absence of sanctions—no prejudice**

Assuming arguendo that defendant's statement of his birthdate to a deputy during the booking process was discoverable, that the State should have produced it pursuant to defendant's discovery request, and that the trial court should have imposed sanctions pursuant to N.C.G.S. § 15A-910 in defendant's trial for sexual offenses and indecent liberties because of the State's failure to do so, defendant was not prejudiced by the admission of evidence of defendant's birthdate obtained during the booking process where the issue of defendant's age was not closely contested; it was obvious to the jury that he was considerably older than the age elements of the crimes charged required him to be; and a deputy's lay opinion testimony that defendant was 29 or 30 years old was properly admitted.

**4. Criminal Law § 102.8— election not to testify—jury argument—right to read Fifth Amendment clause to jury**

Defense counsel should have been permitted in closing argument to read to the jury that clause of the Fifth Amendment material to his election not to testify, i.e., "No person . . . shall be compelled in any criminal case to be a witness against himself . . ." and to say simply that, because of this provision, the jury must not consider defendant's election not to testify adversely to him, or words to this effect; however, defendant was not prejudiced by the trial court's refusal to permit defense counsel to read the privilege against self-incrimination clause of the Fifth Amendment where the court gave the jury an

accurate and complete statement of the law applicable to defendant's election not to testify.

**5. Rape and Allied Offenses § 19— indecent liberties with child—insertion of tongue into child's mouth**

The trial court in a prosecution for taking indecent liberties with minors did not err in instructing the jury that the kissing of a child involving the insertion of an adult's tongue into the child's mouth would constitute an "immoral, improper, or indecent" act within the meaning of subsection (1) of the indecent liberties statute and a "lewd or lascivious" act within the meaning of subsection (2) of that statute. N.C.G.S. § 14-202.1 (1986).

**6. Criminal Law § 128.2— conflict among jurors about smoking—one juror leaving jury room—failure to declare mistrial**

The trial court did not abuse its discretion in refusing to declare a mistrial when one juror left the jury room, told the bailiff that she was "not staying in there with those people," and lit a cigarette where the trial court carefully questioned the bailiff and another deputy and established that the conflict between this juror and the other jurors concerned whether smoking was allowed in the jury room, and the court appealed to the jurors to work together to reach a verdict and the jurors complied.

Justice MITCHELL concurring in the result.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing two concurrent life sentences entered by *Watts, J.*, at the 9 July 1987 Criminal Session of Superior Court, CURRITUCK County, upon defendant's conviction of four counts of first degree sexual offense. On 10 December 1987 we granted defendant's motion to bypass the Court of Appeals for review of his convictions of two counts of taking indecent liberties with children. Argued in the Supreme Court 12 April 1988.

*Lacy H. Thornburg, Attorney General, by Daniel F. McLawhorn, Special Deputy Attorney General, for the state.*

*John W. Halstead, Jr. for defendant-appellant.*

EXUM, Chief Justice.

Defendant contends the trial court erred in: (1) admitting opinion testimony as to defendant's age; (2) refusing to exclude evidence of defendant's age obtained during the booking process; (3) refusing to permit defense counsel in closing argument to read the Fifth Amendment to the United States Constitution; (4) improperly instructing the jury as to indecent liberties; and (5) denying defendant's motion for mistrial because of the behavior of a

juror during jury deliberations. We conclude the trial court erred only in refusing to permit defense counsel to read the privilege against self-incrimination clause of the Fifth Amendment. We also conclude that because of the trial court's jury instructions on defendant's election not to testify, this error does not entitle defendant to a new trial. Defendant received a fair trial free from reversible error.

I.

At trial the state's evidence tended to show the following:

On 26 April 1987 defendant's girlfriend invited her friend's four children, along with their maternal aunt, to eat supper and stay overnight at her home. Among the visitors were identical twin girls, age eight, the victims in this case.

Late in the evening, the twins were put to bed on a queen-sized mattress. While their aunt and their hostess were in another room, defendant got in bed between the twins. He kissed each of them, putting his tongue in their mouths, ears and noses. He touched and rubbed their genitals, inserting his finger several times into each twin's vaginal area. The victims asked defendant to stop but he persisted. They told him he was hurting them, asked him to leave and cried. Defendant put his hand over their mouths when they tried to cry out. He threatened to slap them and to kill their mother if they told her what had happened. In the silence that followed, the twins' aunt came into the room and sat down on the sofa. Defendant left the bed, and the aunt got into bed with the girls, one of whom immediately began to whine that she wanted to go home. As soon as defendant left the room, the other twin told her aunt that defendant had "kissed her the wrong way." Both girls were restless and had difficulty getting to sleep.

On Monday morning defendant stayed in his bedroom and the twins, anxious to leave, waited at the door for their mother. As mother and children together drove out of the driveway, the same twin who had told her aunt about being kissed "the wrong way" immediately told her mother how she had been kissed by defendant. That same afternoon, the twins told their aunt how defendant had touched their genitals. She asked them to repeat this to their mother, who immediately called the sheriff's department.

Their parents checked the twins for discharge or other signs of genital injury, but finding nothing more than slight redness, they decided not to take the girls to the hospital.

On Wednesday of the same week, when both children complained of burning and itching of their genitals, their mother took them to Albemarle Hospital. At the hospital Susan Pierson, R.N., and Waynette Spaith, L.P.N., interviewed the victims. They related again how defendant had inserted his finger in their vaginal area. Nurse Pierson was with Leroy Hand, M.D., when he conducted a pelvic examination of the first victim; Nurse Spaith was present when Dr. Hand examined the second victim. The nurses and doctor observed redness and a small tear in the mucous membrane between the labia majora and minora of each victim. The tears were located in the same place on both victims, between the external folds of the vagina on the left side. No other injuries to their vaginas were observed.

Defendant presented no evidence. Defense counsel moved for a mistrial based on the failure of the state to introduce evidence of defendant's age.* The trial court granted the state's motion to reopen its case for the purpose of adducing further evidence as to defendant's age. Over defendant's objection, Deputy Donald Cooper testified that on 2 May 1987 he served process on defendant. He said he took defendant to the Currituck County Sheriff's Department and, in order to complete the booking process, inquired about his birthdate. Defendant told Deputy Cooper that his birthdate was 8 May 1956. Deputy Cooper was also allowed to testify that, in his opinion, defendant appeared to be between 29 and 30 years old.

II.

[1] Defendant first argues the trial court erred in allowing Deputy Cooper to testify, over defendant's objection, that in his opin-

---

* Under N.C.G.S. § 14-27.4 a person is guilty of first degree sexual offense if he, being at least 12 years old and at least four years older than the victim, engages in a sexual act with a victim under the age of 13.

Under N.C.G.S. § 14-202.1 a person is guilty of taking indecent liberties with children if he, being 16 years of age or more and at least five years older than the child in question, "takes or attempts to take . . . indecent liberties . . . with a child under the age of 16 years . . . ."

ion defendant appeared to be between 29 and 30 years of age. There was no error in the admission of this testimony.

To convict a defendant of first degree sexual offense the state must prove, among other things, that the defendant "is at least 12 years old and is at least 4 years older than the victim . . . ." N.C.G.S. § 14-27.4(a)(1) (1986). To convict a defendant of taking indecent liberties, the state must prove that the defendant is "16 years of age or more and at least 5 years older than the child in question . . . ." N.C.G.S. § 14-202.1(a) (1986). At trial the state's evidence showed that both victims were 8 years old. Thus, in order to convict defendant under both statutes, the state had to prove, as to *defendant's* age, only that he was at least 16 years of age at the time of the crimes.

Under North Carolina Rule of Evidence 701 a lay witness may testify in the form of an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.G.S. § 8C-1, Rule 701 (1986). Deputy Cooper had ample opportunity to observe defendant both during the booking process and while they were together in the courtroom. Thus his opinion of defendant's age was rationally based on his perception of defendant, and it was helpful to the jury in determining the age requirements of the crimes charged. It, therefore, comports with the requirements of Rule 701.

When our Rules of Evidence as codified do not specifically address an evidentiary question, "North Carolina precedents will continue to control unless changed by our courts." *State v. Williams*, 322 N.C. 452, 456, 368 S.E. 2d 624, 626-27 (1988) (quoting N.C.G.S. § 8C-1, Commentary, Rule 102 (1986)). Our pre-Rules case, *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977), speaks clearly to the question of the admissibility of lay opinion evidence of the age of a criminal defendant when age is a necessary element of the crime. In *Gray*, defendant was prosecuted for first degree rape under N.C.G.S. § 14-21(a)(2). Under that statute, the state was required to prove the defendant was over sixteen years of age at the time of the alleged rape. In an effort to meet that burden, the state elicited lay opinions from several witnesses as to defendant's age. In concluding that the testimony was properly admitted we said:

State v. Banks

> Since the age of a defendant is a fact peculiarly within his own knowledge, the state must be left some latitude within which to carry its burden of proof on this issue. We, therefore, adopt the rule that lay witnesses with an adequate opportunity to observe and who have in fact observed may state their opinion regarding the age of a defendant in a criminal case when the fact that he was at the time in question over a certain age is one of the essential elements to be proved by the state. It is important to note that the exact age of the defendant is not in issue, nor need the state prove it. It must prove only that he was at the time of the offense charged over sixteen. The rule we adopt should not be interpreted to extend to any case, criminal or civil, where the *exact* age of someone must be proved.

*Id.* at 287, 233 S.E. 2d at 916 (emphasis in original).

Deputy Cooper's opinion as to defendant's age was admissible under *Gray.* He had an opportunity to observe defendant; he in fact observed him; and it was not necessary in this case for the state to prove defendant's *exact* age in order to convict him of any of the crimes with which he was charged.

We conclude the lay opinion testimony was properly admitted, and accordingly overrule this assignment of error.

### III.

Defendant next contends the trial court erred by allowing Deputy Cooper to testify that defendant told the deputy that his birthdate was 8 May 1956. Over defendant's objection, Deputy Cooper was permitted to testify that, during the booking procedure, he asked defendant several biographical questions, including defendant's name, age and date of birth. It was then that defendant told Deputy Cooper that his birthdate was 8 May 1956.

Defendant objected at trial to the admission of this testimony on two grounds, arguing that: (1) evidence of his age was obtained in violation of his privilege against compulsory self-incrimination; and (2) the state failed to disclose this oral statement during voluntary discovery. He brings the same arguments forward on his appeal.

## A.

[2] The Fifth Amendment requires suppression of statements elicited from an accused during custodial interrogation unless questioning was preceded by appropriate warnings and a voluntary and intelligent waiver of the right to remain silent and to have counsel present. *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966).

In the leading case in this jurisdiction on point, *State v. Ladd*, 308 N.C. 272, 302 S.E. 2d 164 (1983), this Court held that *Miranda* warnings were not required as a prerequisite to the admissibility of information routinely obtained during the booking process, saying:

> An overwhelming number of courts that have considered this question have held that *Miranda* does not apply to the gathering of biographical data necessary to complete booking (citations omitted).

> We . . . hold that interrogation does not encompass routine informational questions posited to a defendant during the booking process.

*Id.* at 286-87, 302 S.E. 2d at 173. The Court in *Ladd* cautioned, however, that:

> [W]e do not construe this limited exception to include any and all questions asked during the booking process. Such a rule would totally emasculate the *Miranda* protections and render meaningless the defendant's rights to remain silent and to have the presence of counsel. If all questions asked during booking were free from *Miranda* proscriptions, police officials could quiz the defendant about any subject so long as they timed their queries to coincide with the incidence of booking, regardless of whether the defendant had been given the *Miranda* warnings, whether he had invoked his right to remain silent or whether he had previously asked for an attorney. We therefore limit this exception to *routine informational* questions necessary to complete the booking process that are *not* "reasonably likely to elicit an incriminating response" from the accused.

*Id.* at 287, 302 S.E. 2d at 173 (emphasis in original).

Defendant argues that because age is an essential element of the crimes for which he was being booked, questions regarding his date of birth would "elicit an incriminating response" and call for information which is not routine. Thus, defendant argues, the testimony would not be admissible under the *Ladd* exception to *Miranda* requirements.

We disagree. Under *Ladd*, the *Miranda* requirements are inapplicable to routine questions asked during the booking process unless such questions are designed to elicit incriminating information from a suspect. Deputy Cooper testified that when processing a suspect for booking, the processing officer regularly obtains certain routine information from the suspect, such as the suspect's name, date of birth, age, sex, race, social security number and address. As the processing officer in this case, Deputy Cooper obtained this kind of information from defendant. Deputy Cooper was not investigating any crime nor did he interrogate defendant for the purpose of eliciting incriminating information.

In determining the character of information for the purpose of applying the *Ladd* exception, the focus must be on the time and circumstances under which it was obtained, not the use to which it was ultimately put. That the information incidentally helped establish an essential element of the crimes for which defendant was booked does not make it more than routine at the time it was obtained.

We conclude, therefore, that defendant's Fifth Amendment privilege against compulsory self-incrimination was not violated.

B.

[3] Defendant argues that, even if his Fifth Amendment privilege against compulsory self-incrimination was not violated by the admission of Deputy Cooper's testimony, the statement regarding his birthdate should have been excluded under N.C.G.S. § 15A-910 (1983). Defendant argues that because the state failed to disclose this oral statement during voluntary discovery, the trial court should have excluded the testimony.

Before trial, defendant requested that the state disclose all relevant oral statements made by defendant. In its 2 July 1987 voluntary response to discovery, the state indicated that defendant had not made any oral statement to law enforcement officers

which would be relevant to the case. On direct examination, and over defendant's objection, Deputy Cooper was permitted to testify that defendant said his birthdate was 8 May 1956.

Under N.C.G.S. § 15A-902(a) a party seeking discovery must first request in writing that the other party voluntarily comply with the discovery request. "To the extent that discovery . . . is voluntarily made in response to a request, [it] is deemed to have been made pursuant to an order of the court . . . ." N.C.G.S. § 15A-902(b) (1983). If at any time during the proceedings the court determines a party has failed to comply with discovery, it may impose sanctions pursuant to N.C.G.S. § 15A-910 (1983). The choice of which sanction, *if any*, to impose is left to the sound discretion of the trial court. *State v. Gladden*, 315 N.C. 398, 412, 340 S.E. 2d 673, 682, *cert. denied*, --- U.S. ---, 93 L.Ed. 2d 166 (1986). A trial court will not be reversed on appeal absent a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 741 (1985).

Assuming arguendo that the statement was discoverable, that the state should have produced it pursuant to defendant's discovery request and that the trial court should have imposed sanctions pursuant to N.C.G.S. § 15A-910, we are satisfied that defendant was not prejudiced by the admission of Deputy Cooper's testimony. The issue of defendant's age was not closely contested. He was considerably older than the age elements of the crimes charged required him to be, a fact which must have been obvious to the jury. Deputy Cooper's lay opinion testimony that defendant was 29 or 30 years old was properly admitted. It is well established that a jury may "base its determination of a defendant's age on its own observation of him even when the defendant does not testify." *State v. Gray*, 292 N.C. 270, 286, 233 S.E. 2d 905, 915 (1977). *See also State v. Evans*, 298 N.C. 263, 258 S.E. 2d 354 (1979). In addition, there was evidence that defendant drove a truck and drank alcoholic beverages. There was, then, ample evidence, aside from defendant's statement to Deputy Cooper during the booking process, from which the jury could have found that defendant was at least 16 years of age on 26 April 1987.

Under N.C.G.S. § 15A-1443(a) (1983) prejudicial error occurs "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial." We are satisfied that had the evidence of defendant's date of birth obtained during the booking process not been admitted, the result at trial would have been the same. Accordingly, this assignment of error is overruled.

## IV.

Defendant also contends the trial court erred by refusing to allow defense counsel, in arguing to the jury, to read the Fifth Amendment to the United States Constitution. We conclude this was error; but because the trial court correctly instructed the jury regarding the applicable law, we hold the error does not entitle defendant to a new trial.

During the jury instruction conference, defense counsel requested that in arguing the applicable law, he be allowed to read to the jury the Fifth Amendment. The district attorney objected. Judge Watts, treating the objection as a motion in limine, granted the motion and told defense counsel he could not read the Fifth Amendment because, under our case law, neither defense counsel nor the prosecuting attorney could comment on defendant's failure to testify. In his later instructions to the jury Judge Watts stated:

> The defendant . . . has not testified in this matter and has not offered any evidence. The law of North Carolina and the Fifth Amendment give Mr. Banks this privilege. Those same laws also assure Mr. Banks that his decision not to testify and his decision to offer no evidence, to rely upon the weakness, if any, in the state's case, create absolutely no presumption against him. Therefore, I caution you, ladies and gentlemen, that the defendant's silence is not to influence your decision in any way with regard to any of the six charges against him.

In jury trials all applicable law, the facts of the case and all reasonable inferences to be drawn from the facts may be argued to the jury. N.C.G.S. § 84-14 (1985); *State v. Taylor*, 289 N.C. 223, 221 S.E. 2d 359 (1976). Moreover, counsel may "*read or state* to the jury a statute or other rule of law relevant to such case."

*State v. McMorris*, 290 N.C. 286, 288, 225 S.E. 2d 553, 554 (1976) (emphasis added). But applicable also to the question here presented is N.C.G.S. § 8-54 (1986), which gives a person charged with a criminal offense the privilege of testifying in his own behalf but adds that his failure to exercise this privilege "shall not create any presumption against him." In *State v. Bovender*, 233 N.C. 683, 65 S.E. 2d 323 (1951), we said:

> The decisions . . . referring to this statute seem to have interpreted its meaning as denying the right of counsel to comment on the failure of a defendant to testify. The reason for the rule is that *extended comment* from the court or from counsel for the state or defendant would tend to nullify the declared policy of the law that the failure of one charged with crime to testify in his own behalf should not create a presumption against him or be regarded as a circumstance indicative of guilt or unduly accentuate the significance of his silence. To permit counsel for a defendant to *comment upon or offer explanation of* the defendant's failure to testify would open the door for the prosecution and create a situation the statute was intended to prevent . . . .

> While the mere statement by defendants' counsel that the law says no man has to take the witness stand *would seem unobjectionable*, it is obvious that further comment or explanation might have been violative of the rule established by the decisions of this Court.

*Id.* at 689-90, 65 S.E. 2d at 329-30 (emphasis added). The Court in *Bovender* held that any error in refusing to permit counsel to recite the law regarding defendant's election to testify was cured by the trial court's legally correct jury instructions on this issue.

A succinct statement of the law governing a defendant's election not to testify was given in *State v. Randolph*, 312 N.C. 198, 321 S.E. 2d 864 (1984):

> A criminal defendant cannot be compelled to testify, and any reference by the State regarding his failure to do so violates an accused's constitutional right to remain silent. *Griffin v. California*, 380 U.S. 609, *reh. denied*, 381 U.S. 957 (1965). Well before *Griffin*, N.C.G.S. 8-54 provided that the failure of a defendant to testify creates no presumption against him.

We have interpreted this statute as prohibiting the prosecution, the defense, or the trial judge from commenting upon the defendant's failure to testify. *See, e.g., State v. Bovender,* 233 N.C. 683, 65 S.E. 2d 323 (1951); *State v. Humphrey,* 186 N.C. 533, 120 S.E. 85 (1923). A nontestifying defendant, however, has the right upon request to have the trial court instruct the jury that his failure to testify may not be held against him. *Carter v. Kentucky,* 450 U.S. 288 (1981); *State v. Leffingwell,* 34 N.C. App. 205, 237 S.E. 2d 550 (1977).

*Id.* at 205-06, 321 S.E. 2d at 869.

Our cases and those of the United States Supreme Court thus establish that any *comment or explanation* by the parties or the court on a defendant's election not to testify is improper. Our cases also make clear that the parties, through counsel, may read statutes and rules of law material to the case. Clearly this latter principle would also include material provisions of the state and federal constitutions. It would be anomalous, indeed, not to permit the reading by counsel in courts of law of material portions of cases, statutes and constitutions which, after all, provide the legal underpinning for all that happens in those courts. The mere reading of these authoritative legal texts, which, if they are material to the case, ought to be permitted, is not the same as "comment or explanation," which, in the case of a defendant's election not to testify, is prohibited.

[4]  We hold that defense counsel should have been permitted to read to the jury that clause of the Fifth Amendment material to his election not to testify, i.e., "No person . . . shall be compelled in any criminal case to be a witness against himself . . ." and to say simply that because of this provision, the jury must not consider defendant's election not to testify adversely to him, or words to this effect. No further comment or explanation of his election should have been permitted.

In order to obtain a new trial, however, defendant must show that the error complained of is so prejudicial that without the error there is a reasonable possibility there would have been a different result at trial. N.C.G.S. § 15A-1443(a) (1983); *State v. Loren,* 302 N.C. 607, 613, 276 S.E. 2d 365, 369 (1981); *State v. Bovender,* 233 N.C. 683, 65 S.E. 2d 323 (1951). In his general instructions to the jury, Judge Watts gave an accurate and com-

plete statement of the law applicable to defendant's election not to testify. We are satisfied that even if defense counsel had been permitted to read that portion of the Fifth Amendment pertinent to this election, the result at trial would have been the same. No reversible error, therefore, was committed.

## V.

[5]  Defendant next argues the trial court improperly defined the crime of taking indecent liberties. He complains of Judge Watts' instruction that defendant's insertion of his tongue into the children's mouths in the act of kissing them could be an act punishable under the indecent liberties statute. Defendant contends that only acts which are "of an unnatural sexual nature," but not otherwise punishable under the crime against nature or incest statutes, N.C.G.S. §§ 14-177, -178 and -179, are punishable under the indecent liberties statute; and, he argues, the kissing described by Judge Watts is not such an act.

The indecent liberties statute provides:

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C.G.S. § 14-202.1 (1986).

Upon evidence for the state which tended to show, among other things, that the thirty-year-old defendant placed his tongue in the mouth, ears and noses of the two eight-year-old victims, Judge Watts instructed the jury that under subsection (1) of the statute the state must prove, in addition to the age requirements of the statute:

that the defendant willfully took an indecent liberty with the . . . child . . . for the purpose of arousing or gratifying sex-

ual desire. An indecent liberty is defined as an immoral, improper or indecent touching by the defendant upon that child such as a fondling of the genital area or a kissing act involving the insertion of the defendant's tongue into the child's mouth.

Judge Watts also instructed the jury that under subsection (2) of the statute the state must prove, in addition to the age requirements of the statute:

that defendant wilfully committed a lewd or lascivious act upon the . . . child . . . . Fondling of the genital area of a child or the kissing of a child involving the insertion of an adult's tongue into the child's mouth would be a lewd or lascivious act within the meaning or intent of the statute.

We find no error in these instructions. N.C.G.S. § 14-202.1 "clearly prohibits sexual conduct with a minor child." *State v. Elam*, 302 N.C. 157, 162, 273 S.E. 2d 661, 665 (1981). "Indeed, the legislature enacted section 14-202.1 to encompass more types of deviant behavior, giving children broader protection than available under other statutes proscribing sexual acts." *State v. Etheridge*, 319 N.C. 34, 49, 352 S.E. 2d 673, 682 (1987). The Court of Appeals properly recognized the great breadth of protection against sexual contact the statute seeks to afford children and the reasons for it in *State v. Hicks*, 79 N.C. App. 599, 339 S.E. 2d 806 (1986), when it said:

Undoubtedly its [the statute's] breadth is in recognition of the significantly greater risk of psychological damage to an impressionable child from overt sexual acts. We also bear in mind the enhanced power and control that adults, even strangers, may exercise over children who are outside the protection of home or school.

*Id.* at 603, 339 S.E. 2d at 809.

Contrary to defendant's contentions, the indecent liberties statute is not intended to punish only acts which, if committed by and against adults, would be inherently "unnatural," such as crimes against nature and incest. Former N.C.G.S. § 14-202.1 required that the state prove defendant intended to "commit an unnatural sexual act." N.C.G.S. § 14-202.1 (Replacement 1969). The legislature rewrote the indecent liberties statute in 1975, 1975

Session Laws, Chapter 779, § 1, removing this requirement and dividing the statute into two subsections. The substantive features of the statute have remained unchanged since this rewrite. Under the present statute the state, in addition to the age requirements, must prove under subsection (1) an "immoral, improper, or indecent" liberty committed "for the purpose of arousing or gratifying sexual desire" and under subsection (2), a "lewd or lascivious act upon or with the body or any part or member of the body" of the child.

We are satisfied that defendant's conduct falls within the purview of both subsections of the statute. Defendant, a thirty-year-old man, waited until all the other adults were in another part of the house, entered the room where the victims lay, got into bed between the children and kissed each of them, putting his tongue in their mouths, ears and noses. He then threatened to strike the children and kill their mother if they told anyone what he had done. Under these circumstances, the acts of kissing as described by Judge Watts in his jury instructions are, as he properly told the jury, "immoral, improper, or indecent" acts within the meaning of subsection (1) of the statute. Likewise, as he also properly instructed, the acts of kissing here were "lewd or lascivious" acts within the meaning of subsection (2) of the statute.

This assignment of error is overruled.

## VI.

[6] Finally, defendant argues the trial judge abused his discretion by denying defendant's motion for a mistrial based upon the behavior of, and remarks made by, one of the jurors in the case. We disagree.

Approximately one and one-half hours after the jury had begun deliberations, Juror 9 opened the door to the jury room and told Deputy Heath, "You can carry me to jail or any where you want to but I'm not staying in there with those people. . . ." Deputy Heath requested that she return to the jury room but she refused. He gave her a chair, summoned Deputy Keaton to stay with her and left to report the matter to the trial court. The juror asked Deputy Keaton for an ashtray and lit a cigarette.

The trial court, having been told by Deputy Heath what happened, summoned the entire jury back to the courtroom and asked whether they had reached a verdict. Upon being told the jury had not reached a verdict, the trial court gave further instructions and requested that the jury resume deliberations. As the jurors left the courtroom, Juror 9, the smoker, was overheard muttering, "a bunch of a-- h--." In the absence of the jury the trial court carefully questioned the two deputies. Based on their testimony and the fact that earlier in the week the jury foreman had complained of an allergic reaction to smoke in the jury room, the court concluded the episode resulted from a conflict over smoking and denied defendant's motion for mistrial.

A motion for mistrial is usually addressed to the sound discretion of the trial judge. *State v. Rogers*, 316 N.C. 203, 341 S.E. 2d 713 (1986). The decision of the trial court will not be reversed absent a showing of abuse of discretion. *State v. King*, 311 N.C. 603, 320 S.E. 2d 1 (1984). A ruling committed to the trial court's discretion will be upset only when the defendant shows that the ruling could not have been the result of a reasoned decision. *State v. Cameron*, 314 N.C. 116, 119, 335 S.E. 2d 9, 11 (1985). Mistrial is a drastic remedy which is warranted only when serious improprieties would make it impossible to attain a fair and impartial verdict. *State v. Calloway*, 305 N.C. 747, 291 S.E. 2d 622 (1982).

We are satisfied from the facts as set out above that the trial court did not abuse its discretion in denying defendant's motion for mistrial. Earlier in the trial the court had been made aware of a conflict over smoking in the jury room. The trial court carefully questioned both the bailiff and deputy, established that to smoke or not to smoke was the source of the conflict between Juror 9 and the other jurors. Judge Watts appealed to the jurors to work together to reach a verdict and the jurors complied. We find the denial of defendant's motion for mistrial to be a reasoned decision and conclude there was no abuse of discretion.

In defendant's trial we find

No error.

Justice MITCHELL concurring in the result.

I concur in most of the reasoning of the thoughtful opinion of the Chief Justice for the Court and in the result reached. However, although I agree that the trial court erred in refusing to permit the defendant's counsel to read the applicable clause of the Fifth Amendment to the jury, I do not agree with the Court's conclusion that the defendant's counsel was also entitled to "say simply that because of this provision the jury must not consider defendant's election not to testify adversely to him, or words to this effect." This would amount to allowing the defendant to comment upon his failure to testify and violate the prohibition set forth in our prior cases. *State v. Randolph*, 312 N.C. 198, 321 S.E. 2d 864 (1984); *State v. Boone*, 307 N.C. 198, 297 S.E. 2d 585 (1982); *State v. Bovender*, 233 N.C. 683, 65 S.E. 2d 323 (1951); *State v. Humphrey*, 186 N.C. 533, 120 S.E. 85 (1923).

More importantly, although our ordinary rules would permit the prosecutor to respond once the defendant had opened the door by commenting upon his own failure to take the stand and testify, the prosecutor is constitutionally prohibited from doing so in instances such as this. Requiring the State to argue its case with one hand tied behind its back in this fashion would not be necessary, however, if the Court simply adhered to the rule laid down in *Randolph, Boone, Bovender* and *Humphrey* prohibiting either the prosecutor or the defendant's counsel from discussing the defendant's failure to testify. As the Court's opinion demonstrates, that prohibition creates no prejudice to the defendant, as the trial court must correctly explain the application of the Fifth Amendment in the context of the defendant's decision not to testify, if requested to do so by the defendant. Therefore, the rule applied by the Court in this case *unnecessarily* places the prosecution at a disadvantage in arguing its case.