MURPHY, Judge.
 

 *529
 
 The State may not condition one constitutional right upon the violation of another. Thus, a defendant cannot be required to make a sworn statement asserting his date of birth in his affidavit of indigency and the State use this evidence against him later to prove elements of alleged crimes.
 

 Raul Pachicano Diaz ("Defendant") appeals from jury verdicts convicting him of abduction of a child, three counts of statutory rape, and four counts of second degree sexual exploitation. On appeal, Defendant argues: (1) his constitutional rights to due process, a fair trial before an impartial jury, and against self-incrimination were violated when the State gave jurors copies of his affidavit of indigency; and (2) there was insufficient evidence on the abduction of a child charge for the charge to go to the jury. We grant Defendant a new trial on the abduction of a child charge and statutory rape charges, and hold the trial court did not commit error in allowing jurors to see Defendant's amount of bond in his affidavit and in denying Defendant's motion to dismiss the abduction of a child charge.
 

 I. Background
 

 The State's evidence tended to show the following. Defendant and Julie
 
 [1]
 
 began dating in "late fall, early winter" of 2014. Julie was a freshman in high school, and Defendant was a senior at the same school. At that time, Julie was fourteen years old. Defendant first told Julie he was eighteen years old, but she later found out he was nineteen years old.
 

 Beginning in January 2015, the two started skipping school together. Sometimes the two went "out" or to Durham, but other times the two went to Defendant's home. While at Defendant's home, the two engaged in sexual intercourse on multiple occasions. During one of their sexual engagements in March or April, Defendant asked Julie if he could
 
 *530
 
 record the two of them having sex. Julie agreed to let Defendant tape them, but then later worried Defendant would use it to "manipulate"
 
 *453
 
 her. Defendant taped their sexual activity on multiple occasions.
 

 Sometime in March or April, Defendant got the idea to leave town. Julie agreed to leave for several reasons: First, she was in love with Defendant. Second, Defendant told Julie that if she did not go with him, she was never going to see him again. Third, Julie feared he would "use those videos to manipulate [her]" by showing them to people. While Defendant did not force Julie to go with him, she "felt forced." At first, Julie was "nervous, scared, afraid, [and] sad" to leave town, but then she became "excited and happy" at the prospect of "mak[ing] things different." Julie did not tell her mother she planned to leave town.
 

 On 14 April 2015, Julie got on her school bus, as if she was attending school, but then got off the bus and met Defendant. The two waited for Julie's mother to leave Julie's home. After Julie's mother was gone, they went to Julie's home and packed Julie's belongings. Then, they went and retrieved Defendant's belongings from his home.
 

 The two drove Defendant's car to Defendant's uncle's home in New Mexico. Once they arrived, Defendant's uncle told them they had to "do things right" and instructed Julie and Defendant to go back home. Defendant's uncle also told Julie to call her mother. Julie called her mother, but refused to tell her mother where she was.
 

 Defendant and Julie left New Mexico and drove to Broken Arrow, Oklahoma. There, the two "tried to get settled." Both Defendant and Julie began working, and the two leased an apartment together. On 20 May 2015, U.S. Marshals arrived at Julie's place of work. The Marshals asked for her, and she tried to lie and conceal her identity. The Marshals took her away,
 
 [2]
 
 and then she flew to Charlotte.
 

 On 2 June 2015, Julie gave a written statement to Detective Mitchell of the Pitt County Sheriff's Office. In the written statement, Julie asserted Defendant said, "If you want to go back, I'll take you back. I[']m not forcing you to do anything!" Julie told Defendant, "No I don't want to go back. I don't want to!" However, at trial Julie asserted that at the time she wrote the statement, she still loved Defendant and "felt that [she] had to protect him."
 

 *531
 
 On or about 3 June 2015, Defendant was arrested.
 
 [3]
 
 On 14 September 2015, a Pitt County Grand Jury indicted Defendant for abduction of a child, three counts of statutory rape, and four counts of first degree sexual exploitation of a minor.
 

 On 6 October 2015, Defendant completed an affidavit of indigency. In the sworn affidavit, Defendant asserted his date of birth was 20 November 1995. Additionally, the affidavit listed Defendant's "Bond Type" as "Secured", in an amount of $500,000.00.
 

 On 16 May 2016, Defendant's case came on for trial. Julie and her mother testified. Following Julie's testimony, the State moved to admit the affidavit of indigency into evidence. Defendant objected on the grounds of "relevance, due process, hearsay, [and] confrontation." The trial court overruled Defendant's objection and allowed the State to publish the affidavit to the jury by distributing an individual copy to each juror. When the State rested, Defendant moved to dismiss all of the charges against him. The trial court denied Defendant's motions. Defendant did not present any evidence, and Defendant renewed his motions to dismiss. The trial court denied Defendant's motions.
 

 The jury found Defendant guilty of abduction of a child, three counts of statutory rape, and four counts of second degree sexual exploitation. The trial court sentenced Defendant as a prior record level I. The court consolidated the abduction convictions and all three statutory rape convictions and sentenced Defendant to 65 to 138 months imprisonment. The court also ordered Defendant pay $1,054.10 in restitution, for Julie's
 
 *454
 
 flight from Oklahoma to Charlotte. For the sexual exploitation convictions, the court imposed four consecutive suspended terms of 25 to 90 months imprisonment. Lastly, the court imposed 36 months of supervised probation for each sexual exploitation conviction. Defendant filed timely written notice of appeal.
 

 II. Standard of Review
 

 We review preserved violations of constitutional rights de novo.
 
 State v. Graham
 
 ,
 
 200 N.C. App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009) (citing
 
 State v. Tate
 
 ,
 
 187 N.C. App. 593
 
 , 599,
 
 653 S.E.2d 892
 
 , 897 (2007) ). "Once error is shown, the State bears the burden of proving the error was harmless beyond a reasonable doubt."
 
 Id.
 
 at 214,
 
 683 S.E.2d at
 
 444
 
 *532
 
 (citing N.C.G.S. § 15A-1443 (b) (2009) ). "In determining whether error is harmless beyond a reasonable doubt, ... the rule is that if there is a reasonable possibility that the evidence complained of might have contributed to the conviction, it is not harmless beyond a reasonable doubt."
 
 State v. Knight
 
 ,
 
 53 N.C. App. 513
 
 , 514-15,
 
 281 S.E.2d 77
 
 , 78 (1981).
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (quotation marks and citation omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied
 
 ,
 
 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995).
 

 Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty.
 

 Fritsch
 
 ,
 
 351 N.C. at 379
 
 ,
 
 526 S.E.2d at 455
 
 (quotation marks, citations, brackets, and emphasis omitted).
 

 III. Analysis
 

 We address Defendant's arguments in two parts: (1) Defendant's affidavit of indigency; and (2) Defendant's motion to dismiss the abduction of a child charge.
 

 A. Defendant's Affidavit of Indigency
 

 Defendant alleges the trial court erred in allowing jurors to see his affidavit of indigency for two reasons: (1) it violated his right to a
 
 *533
 
 fair trial because it indicated he was under a secured bond of $500,000, which had not been posted, thus, indicating he was still in custody; and (2) putting his date of birth on the affidavit violated his right against self-incrimination. We address these arguments in turn, but first we must determine whether Defendant properly preserved his objection for appellate review.
 

 i. Preservation for Appellate Review
 

 After his valid objection to preserve his constitutional rights, Defendant failed to specifically obtain a ruling from the trial court on the constitutional issues he now attempts to raise on appeal. Thus, Defendant has not properly preserved these constitutional issues for appellate review.
 

 In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.
 
 It is also necessary for the complaining party to obtain a
 

 *455
 

 ruling upon the party's request, objection or motion
 
 .
 

 State v. Blizzard
 
 ,
 
 169 N.C. App. 285
 
 , 292,
 
 610 S.E.2d 245
 
 , 250 (2005) (emphasis added) (citation omitted);
 
 see
 
 N.C.R. App. P. 10(a) (1) (2017). "Assignments of error are generally not considered on appellate review unless an appropriate and timely objection was entered
 
 and ruling obtained
 
 ."
 

 Id.
 

 at 292
 
 ,
 
 610 S.E.2d at 250
 
 (emphasis added) (citing
 
 State v. Short
 
 ,
 
 322 N.C. 783
 
 , 790,
 
 370 S.E.2d 351
 
 , 355 (1988) ). As such, "a constitutional question which is not raised
 
 and passed upon
 
 in the trial court will not ordinarily be considered on appeal."
 
 State v. Hunter
 
 ,
 
 305 N.C. 106
 
 , 112,
 
 286 S.E.2d 535
 
 , 539 (1982) (emphasis added) (citations omitted).
 

 In the instant case, the State moved the trial court to admit into evidence Defendant's affidavit of indigency as a certified true copy of a public document. Defendant objected, listing both evidentiary and constitutional grounds for the objection, and the trial court ruled as follows:
 

 [Defense counsel]: We would object, your Honor; relevance, due process, hearsay, confrontation.
 

 THE COURT: All right. The Court is going to find that the document marked State's Exhibit 3 is an affidavit of indigency. The document was signed by the Defendant under oath before the deputy clerk of court on October 6th, 2015. That this is a true copy of the original document as
 
 *534
 
 it appears in the court file in these matters, at the District Court level.
 
 And pursuant to 902, Rule 902 Rules of Evidence, it is a self-authenticating document, and the Court is going to admit it into evidence
 
 .
 

 (emphasis added).
 

 Where, as here, the trial court did not rule on Defendant's objection on constitutional grounds, this Court should not consider for the first time on appeal the constitutional questions Defendant raises now.
 
 See
 

 id.
 
 at 112,
 
 286 S.E.2d at
 
 539 ;
 
 see
 

 State v. Davis
 
 ,
 
 198 N.C. App. 146
 
 , 148-49,
 
 678 S.E.2d 709
 
 , 712-13 (2009) (invoking Rule 2 in order to address the question raised by the defendant on appeal which defendant failed to preserve for appellate review where the defendant's counsel failed to obtain a ruling on the issue). However, based on the specific circumstances in this case and in order to avoid the possibility of a manifest injustice, we exercise our discretion under Rule 2 of the North Carolina Rules of Appellate Procedure and reach the merits of Defendant's constitutional arguments. N.C.R. App. P. 2 (2017).
 

 ii. The Amount of Bond on the Affidavit of Indigency
 

 Defendant first argues the amount of bond on his affidavit of indigency violated his constitutional right to a fair trial. Specifically, Defendant argues he was prejudiced by the jurors knowing he was in custody. We disagree.
 

 "Essential to the concept of due process is the principle that every person who stands accused of a crime is entitled to the 'fundamental liberty' of a fair and impartial trial."
 
 State v. Tolley
 
 ,
 
 290 N.C. 349
 
 , 364,
 
 226 S.E.2d 353
 
 , 366 (1976) (citations omitted). The presumption of innocence "is a basic component of a fair trial under our system of criminal justice."
 

 Id.
 

 at 364
 
 ,
 
 226 S.E.2d at 366
 
 (citations omitted). Thus, "courts must guard against factors which may undermine the fairness of the fact-finding process and thereby dilute the principle that guilt is to be established by probative evidence and beyond a reasonable doubt."
 

 Id.
 

 at 365
 
 ,
 
 226 S.E.2d at 366
 
 (quotation marks and citations omitted).
 

 From these rules, our appellate courts have held, generally, a defendant may not be shackled or bonded during trial. Our Supreme Court listed three reasons for not physically restraining a defendant during trial:
 

 (1) it may interfere with the defendant's thought processes and ease of communication with counsel, (2) it intrinsically gives affront to the dignity of the trial process, and most importantly, (3) it tends to create prejudice in the
 
 *535
 
 minds of the jurors by suggesting that the defendant is an obviously bad and dangerous person whose guilt is a foregone conclusion.
 

 Id.
 

 at 366
 
 ,
 
 226 S.E.2d at 367
 
 . (citations omitted).
 

 *456
 
 However, the
 
 Tolley
 
 rule has not been extended beyond a defendant being physically restrained in the courtroom. First, in
 
 State v. Montgomery
 
 ,
 
 291 N.C. 235
 
 ,
 
 229 S.E.2d 904
 
 (1976), our Supreme Court declined to extend
 
 Tolley
 
 to a situation where several jurors saw the defendant in handcuffs while being taken from the jail to the courthouse.
 
 Id.
 
 at 251-52,
 
 229 S.E.2d at 913-14
 
 . The Court highlighted the fact that the "defendant was never shackled or bound while in the courtroom."
 
 Id.
 
 at 250,
 
 229 S.E.2d at 912
 
 . Next, in
 
 State v. Fowler
 
 ,
 
 157 N.C. App. 564
 
 ,
 
 579 S.E.2d 499
 
 (2003), defendant argued the trial court committed constitutional error when the trial court told the jury he was in the custody of the Sheriff's Department.
 

 Id.
 

 at 566
 
 ,
 
 579 S.E.2d at 500-01
 
 . This Court rejected that argument and stated "the statements by the trial court do not create the same prejudice to the defendant as that raised when a defendant appears in court in shackles or prison garb."
 

 Id.
 

 at 566
 
 ,
 
 579 S.E.2d at 501
 
 (citation omitted).
 

 Defendant argues the information on the affidavit of indigency violated his presumption of innocence. Specifically, Defendant complains the amount of a high bond lended itself to jurors believing the magistrate "considered the crime so grave and the risk of escape so high[.]" Additionally, Defendant contends that because the "By Whom Posted" portion was left blank, "the jurors could have understood that [Defendant] had not been able to make bond and was in custody."
 

 We hold that even if the jurors inferred Defendant was in custody and unable to pay the $500,000 bond, his right to a fair trial was not violated. As in
 
 Fowler
 
 , there is some evidence before the jury that Defendant was in custody, but Defendant was not shackled or handcuffed in the courtroom.
 

 Id.
 

 at 566
 
 ,
 
 579 S.E.2d at 500-01
 
 . This inference does "not create the same prejudice to the defendant as that raised when a defendant appears in court in shackles or prison garb."
 

 Id.
 

 at 566
 
 ,
 
 579 S.E.2d at 501
 
 (citations omitted). Accordingly, we hold Defendant's right to a fair trial was not violated by the jurors seeing his bond amount, and that no one had posted bond, on his affidavit of indigency.
 

 iii. Defendant's Date of Birth on the Affidavit of Indigency
 

 Defendant next argues his constitutional right against self-incrimination was violated by the State admitting his affidavit of indigency into evidence, which contained his date of birth. We agree.
 

 *536
 
 Our Supreme Court in
 
 State v. White
 
 ,
 
 340 N.C. 264
 
 ,
 
 457 S.E.2d 841
 
 (1995) held:
 

 [a] defendant cannot be required to surrender one constitutional right in order to assert another.
 
 Simmons v. United States
 
 ,
 
 390 U.S. 377
 
 , 394,
 
 88 S.Ct. 967
 
 , 976,
 
 19 L.Ed.2d 1247
 
 , 1259 (1968). A criminal defendant has a constitutional privilege against compulsory self-incrimination. U.S. Const. amend[s]. V, XIV; N.C. Const. art. I, § 23.
 

 Id.
 
 at 274,
 
 457 S.E.2d at 847
 
 . Thus, Defendant cannot be required to complete an affidavit of indigency to receive his right to counsel, and the State then use the affidavit against Defendant, violating his constitutional right against self-incrimination. The abduction of a child offense requires Julie to be at least four years younger than Defendant. N.C.G.S. § 14-41 (2015). The statutory rape offenses require the State to prove Defendant was "more than four but less than six years older" than Julie at the time of the offenses. N.C.G.S. § 14-27.7A(b) (2015).
 

 We conclude the trial court erred in admitting the affidavit of indigency, which showed Defendant's age-an element in the abduction of a child charge and the statutory rape charges-over Defendant's objection. The State cannot violate Defendant's right against self-incrimination to prove an element of charges against Defendant. Now, we must determine whether this error was harmless beyond a reasonable doubt.
 
 See
 
 N.C.G.S. § 15A-1443 (b) (2015).
 

 In its assertion that the error was harmless beyond a reasonable doubt, the State points to the following portion of Julie's testimony:
 

 Q. ... Do you know how old [Defendant] was back during this time period?
 

 *457
 
 A. In the beginning, he told me he was eighteen. But then I found out he was nineteen.
 

 Q. Do you know what his birthdate was?
 

 A. November the 26th.
 

 Q. Do you happen to know what year he was born in?
 

 A. 1995.
 

 Defendant cross-examined Julie about her knowledge of Defendant's birthdate, specifically that she had never seen Defendant's driver's license, birth certificate, or his passport.
 

 *537
 
 We conclude the State has failed to meet the exceedingly high burden of showing this error was harmless beyond a reasonable doubt. Notably, Julie's testimony about Defendant's date of birth was incorrect. Julie testified Defendant was born on 26 November 1995, but the affidavit reflects that Defendant was born on 20 November 1995. Additionally, as evinced through cross-examination, Julie did not testify regarding a basis for her knowledge. Julie had never seen an official document showing Defendant's correct date of birth or age. Based on this, we conclude "there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and the error is not harmless beyond a reasonable doubt.
 
 Knight
 
 ,
 
 53 N.C. App. at 514
 
 ,
 
 281 S.E.2d at 78
 
 .
 

 Accordingly, we grant Defendant a new trial on the abduction of a child charge and the statutory rape charges. We do not grant Defendant a new trial on the sexual exploitation of a minor convictions because Defendant's age is not an element of that offense.
 
 See
 
 N.C.G.S. § 14-190.17 (2015). We still address Defendant's argument regarding his motion to dismiss the abduction of a child charge, as any alleged error may occur again at his new trial.
 

 B. Motion to Dismiss the Abduction of a Child Charge
 

 Defendant next argues the trial court erred by denying his motion to dismiss the abduction of a child charge. Defendant contends the evidence only shows Julie voluntarily left her home. We disagree.
 

 N.C.G.S. § 14-41, titled "Abduction of children", states:
 

 (a) Any person who, without legal justification or defense, abducts
 
 or induces
 
 any minor child who is at least four years younger than the person to leave any person, agency, or institution lawfully entitled to the child's custody, placement, or care shall be guilty of a Class F felony.
 

 Id.
 

 (emphasis added). "It is 'not necessary for the State to show she [ (the victim) ] was carried away by force, but evidence of fraud, persuasion, or other inducement exercising controlling influence upon the child's conduct would be sufficient to sustain a conviction' for this offense."
 
 State v. Lalinde
 
 ,
 
 231 N.C. App. 308
 
 , 312-13,
 
 750 S.E.2d 868
 
 , 872 (2013) (quoting
 
 State v. Ashburn
 
 ,
 
 230 N.C. 722
 
 , 723,
 
 55 S.E.2d 333
 
 , 333-34 (1949) ). "Of course, if there is no force or inducement and the departure of the child is entirely voluntary, there is no abduction."
 
 State v. Burnett
 
 ,
 
 142 N.C. 577
 
 , 581,
 
 55 S.E. 72
 
 , 74 (1906).
 
 [4]
 

 *538
 
 The evidence presented at trial shows: (1) it was Defendant's decision to leave; (2) Julie characterized 14 April 2015 as the day "we decided to leave"; (3) Defendant videoed the two having sexual relations; (4) Julie wondered if he would use the tapes against her; (5) there is no evidence that Defendant threatened to use the tapes against her; (6) Julie testified she left with Defendant because she was in love with him and because he said she would never see him again if she did not go with him; and (7) When asked if Defendant forced her to go, Julie testified, "No, he didn't, but I felt forced."
 

 When viewing all the evidence in a light most favorable to the State, there is sufficient evidence to survive Defendant's motion to dismiss. When asked why she left with Defendant, Julie testified, "[Defendant] was like, 'If you don't come with me, you're never going to see me again[.]' " This testimony indicates that Defendant induced Julie to leave with him. The evidence presented raises more than just a suspicion or mere conjecture of guilt. Accordingly, we hold the trial
 
 *458
 
 court did not err in denying Defendant's motion to dismiss the abduction of a child charge.
 

 IV. Conclusion
 

 For the reasons stated above, we grant Defendant a new trial on the abduction of a child charge and the statutory rape charges. We hold the trial court committed no error by allowing jurors to see the amount of bond on Defendant's affidavit of indigency and by denying Defendant's motion to dismiss the abduction of a child charge.
 

 NEW TRIAL IN PART; NO ERROR IN PART.
 

 Judge BRYANT concurs.
 

 Judge ARROWOOD concurs in result only.
 

 [1]
 

 We use this pseudonym to protect the identity of the juvenile.
 

 [2]
 

 Julie testified the U.S. Marshals took her to "where they put the bad children", and she could not remember the name of the location.
 

 [3]
 

 Two of the warrants for arrest list 3 June 2015 as the date of arrest. Defendant's brief also asserts the date he was served with warrants of arrest was 3 June 2015. We note some of the warrants have an ineligible date marked as the date of arrest, and others are dated for 8 July 2015.
 

 [4]
 

 This decision was reprinted in 1913 as
 
 142 N.C. 577
 
 ,
 
 55 S.E. 72
 
 .