IN THE SUPREME COURT OF NORTH CAROLINA

No. 412PA17

Filed 16 August 2019

STATE OF NORTH CAROLINA

v.

RAUL PACHICANO DIAZ

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision
of the Court of Appeals, 808 S.E.2d 450 (N.C. Ct. App. 2017), granting defendant a
new trial in part and finding no error in part upon appeal from judgments entered on
18 May 2016 by Judge Jeffrey B. Foster in Superior Court, Pitt County. Heard in the
Supreme Court on 10 April 2019.

> *Joshua H. Stein, Attorney General, by Neil Dalton, Special Deputy Attorney
> General, for the State-appellant.*

> *Marilyn G. Ozer for defendant-appellee.*

HUDSON, Justice.

This case is before us pursuant to the State's petition in the alternative for

discretionary review[1] of the Court of Appeals' opinion which granted defendant a new

trial on his abduction of a child and statutory rape charges after determining that he

was prejudiced by the trial court's decision to allow his affidavit of indigency to be

---

[1] The State's notice of appeal based upon a constitutional question was dismissed *ex
mero motu* on 9 May 2018.

admitted to prove his age—an element of the charges—in violation of his constitutional right against self-incrimination. *State v. Diaz*, 808 S.E.2d 450, 457 (N.C. Ct. App. 2017). Pursuant to the State's petition in the alternative for discretionary review, we now address whether:

> . . . the Court of Appeals err[ed] when it . . . held there was a self-incrimination clause violation where a form filled out by the defendant was admitted into evidence to show the defendant's age which was an element of his crimes, when the defendant's age was testified to without objection by uncontroverted testimony by the victim who lived in the same household.

We conclude that admission of the affidavit was in error; however, because the trial court's error in allowing the affidavit of indigency to be admitted was harmless beyond a reasonable doubt, we affirm the Court of Appeals' opinion in part and reverse it in part.[2]

## I.    Factual and Procedural Background

At trial, the State offered the only evidence. The factual background of this case was established mainly through the testimony of the juvenile victim, Julie.[3] Julie's testimony tended to show the following.

Defendant and Julie met and began dating in the "late fall, early winter" of

---

[2] We are not reviewing the Court of Appeals' conclusions as to: (1) the amount of defendant's bond on the affidavit of indigency, *Diaz*, 808 S.E.2d at 455–56; and (2) defendant's motion to dismiss the abduction of a child charge, *id.* at 457–58. Those issues are not before us.

[3] The Court of Appeals used this pseudonym in order to protect the identity of the juvenile. *Diaz*, 808 S.E.2d at 452 n.1. We will also use that pseudonym in this opinion.

2014. At the time they met, Julie was a freshman in high school and defendant was a senior at the same high school. Julie was fourteen years old, and she would not turn fifteen until 21 July 2015. Defendant told Julie that he was eighteen, but Julie later found out that he was nineteen. Julie testified that defendant's birthdate was 26 November 1995. On cross-examination, Julie testified that she never saw defendant's driver's license, birth certificate, or passport.

After they met, Julie and defendant began "talking." However, at the end of January 2015, Julie and defendant began skipping school to have sex at defendant's house. The two continued having sex through April of 2015. Julie testified that she wanted to have sex with defendant all "but the first time."

At one point in March or April of 2015, defendant asked Julie if he could record them while they were having sex. Julie testified that defendant's request was unexpected and that although she initially did not object to it, she was later worried that defendant might "use[ ] [i]t to manipulate [her]." Defendant made four separate recordings and the trial court admitted all of them into evidence.

On 14 April 2015, Julie and defendant left North Carolina. Julie testified that although it was defendant's idea to leave North Carolina, she agreed to leave with him because: (1) she thought she was in love with him; (2) he told her that she would never see him again if she did not come with him; and (3) she was scared that he was going to use the recordings that he took of them having sex to manipulate her to go with him. Julie ultimately testified on cross-examination that although, in her view,

defendant did not force her to leave with him, she "felt forced."

After leaving North Carolina, defendant and Julie first went to defendant's uncle's house in New Mexico. Defendant's uncle, however, "didn't help [them]." He told them that they needed to "go back and do things right." He also told Julie that she needed to call her mother. Julie did so, but she did not tell her mother where her and defendant were.

After leaving defendant's uncle's house, Julie and defendant went to Broken Arrow, Oklahoma. Julie testified that they "tried to get settled" there. They got an apartment together, and both she and defendant found jobs. Julie testified that at that point, the two were "[b]asically starting a new life" and "helping each other out." Julie testified that although she was "in favor of being out" in Oklahoma, she "kind of wanted to go back." Julie and defendant were away from North Carolina for about a month in total before U.S. Marshals found them in Oklahoma. Once they were found, U.S. Marshals arranged for Julie to return home to Greenville, N.C., on a flight from Oklahoma to Charlotte. Julie had no interaction with defendant after she returned home.

On 2 June 2015, Julie made a written statement to one of the U.S. Marshals who picked her up at the airport in Charlotte. Julie testified at trial that she still loved defendant and felt like she had to protect him at the time that she wrote the statement. The statement tended to: (1) contradict Julie's trial testimony that it was defendant who came up with the idea to record them having sex back in March or

April; and (2) demonstrate that defendant was willing to take Julie back home if she wanted to go back.

On 14 September 2015, defendant was indicted for: (1) one count of abduction of a child under N.C.G.S. § 14-41; (2) three counts of statutory rape under then N.C.G.S. § 14-27.7A(b);[4] and (3) four counts of first-degree sexual exploitation of a minor under N.C.G.S. § 14-190.16.

On 6 October 2015, defendant completed and signed an affidavit of indigency so that a court-appointed attorney could be assigned to his case. Within the sworn affidavit, defendant listed his date of birth as 20 November 1995.

Defendant's trial began on 16 May 2016. At trial, Julie testified to the facts stated herein.[5] At the end of Julie's testimony, the State offered as evidence a copy of defendant's affidavit of indigency. The State asserted that the affidavit was a self-authenticating document under Rule 902 of the North Carolina Rules of Evidence. Defendant objected to the admission of the affidavit on the grounds of "relevance, due process, hearsay, confrontation." The trial court ruled that the affidavit was admissible because under "Rule 902 Rules of Evidence, it is a self-authenticating

---

[4] Now amended and recodified as N.C.G.S. § 14-27.25. *See* An Act to Enact the Women and Children's Protection Act of 2015, S.L. 2015-62, § 1(a), 2015 N.C. Sess. Laws 135, 135–36 (amending N.C.G.S. § 14-27.7A); An Act to Reorganize, Rename, and Renumber Various Sexual Offenses to Make Them More Easily Distinguishable From One Another as Recommended by the North Carolina Court of Appeals in *State of North Carolina v. Slade Weston Hicks, Jr.,*" and to Make Other Technical Changes, S.L. 2015-181, § 7(a)–(b), 2015 N.C. Sess. Laws 460, 461–62 (recodifying N.C.G.S. § 14-27.7A as N.C.G.S. § 14-27.25 and amending the recodified statute according to the changes made in "S.L. 2015-62").

[5] The State also offered testimony from Julie's mother.

document." The trial court then allowed the State to publish the affidavit to the jury. At the close of the State's evidence, defendant moved to dismiss all charges. The trial court denied defendant's motion to dismiss.

The jury found defendant guilty of the following: (1) one count of abduction of a child, (2) three counts of statutory rape; and (3) four counts of second-degree sexual exploitation.. At sentencing, the trial court sentenced defendant as a prior record level I offender. The court consolidated sentencing for defendant's abduction of a child and statutory rape convictions and sentenced him to a term of 65 to 138 months in prison. The trial court also ordered defendant to pay $1,054.51 in restitution as a civil judgment. Further, the trial court sentenced defendant to consecutive, suspended terms of 25 to 90 months in prison for each second-degree sexual exploitation conviction. Lastly, the court ordered 36 months of supervised probation for each second-degree sexual exploitation conviction. Defendant entered his notice of appeal on 19 May 2016.

The Court of Appeals granted defendant a new trial on his abduction of a child and statutory rape charges. *Diaz*, 808 S.E.2d at 452, 457–58. In so doing, the court reached two conclusions that are pertinent here. First, the Court of Appeals concluded that "the trial court erred in admitting the affidavit of indigency, which showed Defendant's age—an element in the abduction of a child charge and the statutory rape charges—over Defendant's objection. The State cannot violate Defendant's right against self-incrimination to prove an element of charges against

Defendant." *Id.* at 456. Specifically, the Court of Appeals reasoned that "Defendant cannot be required to complete an affidavit of indigency to receive his right to counsel, and the State then use the affidavit against Defendant, violating his constitutional right against self-incrimination." *Id.* As supporting authority, the Court of Appeals relied on our decision in *State v. White*, where we stated that "[a] defendant cannot be required to surrender one constitutional right in order to assert another." *Id.* (bracket in original) (citation omitted) (quoting *State v. White,* 340 N.C. 264, 274, 457 S.E.2d 841, 847 (1995); *see also Simmons v. United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 976, 19 L. Ed. 2d 1247, 1259 (1968).

Second, the Court of Appeals concluded that the trial court's constitutional error in admitting the affidavit of indigency was not harmless beyond a reasonable doubt under N.C.G.S. § 15A-1443(b) because:

> Julie's testimony about Defendant's date of birth was incorrect. Julie testified Defendant was born on 26 November 1995, but the affidavit reflects that Defendant was born on 20 November 1995. Additionally, as evinced through cross-examination, Julie did not testify regarding a basis for her knowledge. Julie had never seen an official document showing Defendant's correct date of birth or age.

*Diaz,* 808 S.E.2d at 457.

We allowed the State's petition in the alternative for discretionary review on 9 May 2018 and now review whether the Court of Appeals erred in concluding that: (1) the trial court erred when it admitted defendant's affidavit of indigency into evidence, *id.* at 456; and (2) the trial court's error in admitting the affidavit of indigency was

not harmless beyond a reasonable doubt, *id.* at 457.

## II.    Analysis

Because we conclude that the trial court's error in admitting the affidavit of indigency was harmless beyond a reasonable doubt, we affirm the decision of the Court of Appeals in part and reverse it in part.

"It is well settled that de novo review is ordinarily appropriate in cases where constitutional rights are implicated." *Piedmont Triad Regional Water Auth. v. Sumner Hills Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) (citing *State v. Rogers*, 352 N.C. 119, 124, 529 S.E.2d 671, 674–75 (2000); *Ornelas v. United States*, 517 U.S. 690, 696–97, 116 S. Ct. 1657, 1661–62, 134 L. Ed. 2d 911, 918–19 (1996)); *see also State v. Bowditch*, 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010) ("An appellate court reviews conclusions of law pertaining to a constitutional matter de novo." (citing *State v. Williams*, 362 N.C. 628, 632, 669 S.E. 2d 290, 294 (2008))).

## A. **Whether the Court of Appeals erred in concluding that the trial court committed constitutional error when it admitted defendant's affidavit of indigency into evidence.**

Under the Sixth Amendment to the United States Constitution, an indigent defendant has a right to the assistance of counsel, and this right has been extended to indigent defendants in state courts by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342–45, 83 S. Ct. 792, 795–97, 9 L. Ed. 2d 799, 804–806 (1963).

Under the Fifth Amendment to the United States Constitution,[6] individuals "shall [not] be compelled in any criminal case to be witness[es] against [themselves]." *Pennsylvania v. Muniz*, 496 U.S. 582, 588, 110 S. Ct. 2638, 2643, 110 L. Ed. 2d. 528, 543 (1990) (quoting U.S. Const. amend. V) . Further, although the privilege against self-incrimination "does not protect a suspect from being compelled by the State to produce 'real or physical evidence,' " *Id.* at 589, 110 S. Ct. at 2643, 110 L. Ed. 2d. at 543 (quoting *Schmerber v. California*, 384 U.S. 757, 764, 86 S. Ct. 1826, 1832, 16 L. Ed. 2d. 908, 916 (1966)), it does protect a suspect "from being compelled to testify against [one]self, or otherwise provide the State with evidence of a testimonial or communicative nature," *id.* at 589, 110 S. Ct. at 2643, 110 L. Ed. 2d. at 543–44 (quoting *Schmerber*, 384 U.S. at 761, 86 S. Ct. at 1830, 16 L. Ed. 2d. at 914). In order for a communication to be testimonial within the meaning of the Fifth Amendment, it "must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a 'witness' against [one]self." *Id.* at 589, 110 S. Ct. at 2643, 110 L. Ed. 2d. at 544 (quoting *Doe v. United States*, 487 U.S. 201, 210, 108 S. Ct. 2341, 2347, 101 L.Ed.2d 184, 197 (1988)). " '[T]he vast majority of verbal statements thus will be testimonial' because '[t]here are very few instances in which a verbal statement, either oral or written, will not convey

---

[6] The Fifth Amendment is applicable to the States through the Fourteenth Amendment under *Malloy v. Hogan*, 378 U.S. 1, 3, 84 S. Ct. 1489, 1491, 12 L. Ed. 2d 653, 656 (1964).

information or assert facts.' " *Id.* at 597, 110 S. Ct. at 2648, 110 L. Ed. 2d at 549 (second alteration in original) (quoting *Doe*, 487 U.S. at 213, 108 S. Ct. at 2349, 101 L. Ed. 2d at 199).

In considering the "purposes of the [Fifth Amendment] privilege," *id.* at 595, 110 S. Ct. at 2647, 110 L. Ed. 2d at 547–48 (footnote omitted) (citing *Doe*, 487 U.S. at 212–13, 108 S. Ct. at 2348–49, 101 L.Ed.2d at 198–199), the Court has concluded that they are served when "the privilege is asserted to spare the accused from having to reveal, directly or indirectly, [ ] knowledge of facts relating [the accused] to the offense or from having to share [the accused's] thoughts and beliefs with the Government." *Id.* at 595, 110 S. Ct. at 2647, 110 L. Ed. 2d. at 548 (quoting *Doe*, 487 U.S. at 213, 108 S. Ct. at 2349, 101 L.Ed.2d at 199). "At its core, the privilege reflects our fierce 'unwillingness to subject those suspected of a crime to the cruel trilemma of self-accusation, perjury or contempt.' " *Id.* at 596, 110 S. Ct. at 2647, 110 L. Ed. 2d at 548 (quoting *Doe*, 247 U.S. at 212, 108 S. Ct. at 2348, 101 L. Ed. 2d at 198). "Whatever else it may include, therefore, the definition of 'testimonial' evidence articulated in *Doe* must encompass all responses to questions that, if asked of a sworn suspect during a criminal trial, could place the suspect in the 'cruel trilemma.' " *Id.* at 596–97, 110 S. Ct. at 2648, 110 L. Ed. 2d at 549. "The difficult question whether a compelled communication is testimonial for purposes of applying the Fifth Amendment often depends on the facts and circumstances of the particular case." *Doe*, 487 U.S. at 214–15, 108 S. Ct. at 2350, 101 L. Ed. 2d at 200 (citing *Fisher v.*

*United States*, 425 U.S. 391, 410, 96 S. Ct. 1569, 1581, 48 L. Ed. 2d 39, 56 (1976)).

"It is consistent with the history of and the policies underlying the Self-Incrimination Clause to hold that the privilege may be asserted only to resist compelled explicit or implicit disclosures of incriminating information." *Id.* at 212, 108 S. Ct. at 2348, 101 L. Ed. 2d at 198. "A defendant cannot be required to surrender one constitutional right in order to assert another." *White*, 340 N.C. at 274, 457 S.E.2d at 847 (citing *Simmons*, 390 U.S. at 394, 88 S. Ct. at 976, 19 L. Ed. 2d at 1259). The United States Supreme Court's opinion in *Simmons* provides an instructive illustration of when a defendant is impermissibly compelled to testify by a circumstance in which "one constitutional right should have to be surrendered in order to assert another." *Simmons*, 390 U.S. at 394, 88 S. Ct. at 976, 19 L. Ed. 2d. at 1259. In *Simmons*, the trial court allowed testimony that the defendant gave to establish his Fourth Amendment standing during a hearing on a motion to suppress to be used against him in the guilt phase of his trial. *Id.* at 389, 88 S. Ct. 973–74, 19 L. Ed. 2d. at 1256. In concluding that "these circumstances" were "intolerable," *id.* at 394, 88 S. Ct. at 976, 19 L. Ed. 2d at 1259, the Court reasoned that:

> "[a] defendant is 'compelled' to testify in support of a motion to suppress only in the sense that if he refrains from testifying he will have to forgo a benefit, and testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit. However, the assumption which underlies this reasoning is that the defendant has a choice: he may refuse to testify and give up the benefit. When this assumption is applied to a situation in which the 'benefit' to be gained is that afforded by another provision

of the Bill of Rights, an undeniable tension is created. Thus, in this case [defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination."

*Id.* at 393–94, 88 S. Ct. at 976, 19 L. Ed. 2d. at 1259 (footnotes omitted).

Here, we affirm the Court of Appeals' conclusion that the trial court committed constitutional error when it admitted defendant's affidavit of indigency into evidence. In doing so, the trial court required defendant "to surrender one constitutional right," his Fifth Amendment right against compelled self-incrimination, "in order to assert another," his right to the assistance of counsel as an indigent defendant under the Sixth Amendment. *White*, 340 N.C. at 274, 457 S.E.2d at 847 (citing *Simmons*, 390 U.S. at 394, 88 S. Ct. at 976, 19 L. Ed. 2d. at 1259).

Specifically, as an indigent person, defendant had a constitutional right to the assistance of counsel in state court. *Gideon*, 372 U.S. at 342–45, 83 S. Ct. at 795–97, 9 L. Ed. 2d at 804–06. In order to assert that right, North Carolina law requires an indigent person to complete an affidavit of indigency which is a sworn statement made before a court. N.C.G.S. § 7A-451(c1) (2015) (providing that the determination of indigency will be made "[u]pon application, supported by the defendant's affidavit"); *id.* § 7A-453(a) (providing that after the Office of Indigent Services makes a preliminary determination as to indigency, "[t]he court shall make the final determination"); *id.* § 7A-456(a) (recognizing that statements "in regard to the question of [a defendant's] indigency" are "made . . . under oath or affirmation.").

Therefore, when defendant was completing his affidavit of indigency, he was asserting his Sixth Amendment right to assistance of counsel.

Additionally, by completing the affidavit of indigency, defendant also implicated his Fifth Amendment right to be free from compulsory self-incrimination. Specifically, "on the facts and circumstances of th[is] particular case," defendant's communication on his affidavit of indigency that his birthdate is "11/20/95," is testimonial. *Doe*, 487 U.S. at 214–15, 108 S. Ct. at 2350, 101 L. Ed. 2d at 200 (citing *Fisher*, 425 U.S. at 410, 96 S. Ct. at 1581, 48 L. Ed. 2d at 56). First, in providing his date of birth on the affidavit, defendant did "explicitly . . . relate a factual assertion or disclose information." *Muniz,* 496 U.S. at 589, 110 S. Ct. at 2643, 110 L. Ed. 2d. at 544 (quoting *Doe*, 487 U.S. at 210, 108 S. Ct. at 2347, 101 L. Ed. 2d at 197).

Second, defendant's sworn statement, N.C.G.S. § 7A-456(a), as to his age on his affidavit of indigency, if asked of him as "a sworn suspect during a criminal trial, [w]ould place [him] in the 'cruel trilemma' " *Muniz*, 496 U.S. at 597, 110 S. Ct. at 2648, 110 L. Ed. 2d at 549, of "self-accusation, perjury or contempt.' " *Id.* at 596, 110 S. Ct. at 2647, 110 L. Ed. 2d at 548 (quoting *Doe*, 487 U.S. at 212, 108 S. Ct. at 2348, 101 L. Ed. 2d at 198). Specifically, defendant's charges relevant to this issue are his charges for abduction of a child and statutory rape. The crime of abduction of a child requires that the victim be "any minor child who is *at least four years younger* than the person" abducting the victim. N.C.G.S. § 14-41(a) (2015) (emphasis added). Further, the particular type of statutory rape that defendant was charged with

-13-

required that "defendant engage[ ] in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is more than four but less than six years older than the person[.]" *Id.* § 14-27.7A(b) (2015). Therefore, had defendant been asked to state his date of birth by the prosecutor at trial, he would have faced the "cruel trilemma of self-accusation, perjury or contempt." *Id.* at 596, 110 S. Ct. at 2647, 110 L. Ed. 2d at 548 (quoting *Doe*, 247 U.S. at 212, 108 S. Ct. at 2348, 101 L. Ed. 2d at 198).

In addition to the above, defendant's statement of his date of birth on his affidavit of indigency was testimonial "on the facts and circumstances of th[is] particular case," *Doe*, 487 U.S. at 214–15, 108 S. Ct. at 2350, 101 L. Ed. 2d at 200 (citing *Fisher*, 425 U.S. at 410, 96 S. Ct. at 1581, 48 L. Ed. 2d at 56, because the General Statutes treat an affidavit of indigency as a sworn statement—made before a court under penalty for false statements—to establish defendant's entitlement to services. Specifically, the General Statutes required that defendant support his application with a sworn affidavit. N.C.G.S. § 7A-451(c1) ("Upon application, supported by the defendant's affidavit . . . ."); *see also id.* § 7A-456(a) (recognizing that the affidavit would be made "under oath or affirmation"). Defendant's own affidavit of indigency itself required that all of his statements be "Sworn/Affirmed" by him. Further, even though the Office of Indigent Defense Services has some authority to make a preliminary determination as to a defendant's indigency, "[t]he court shall make the final determination," of a defendant's indigency. *Id.* at § 7A-453(a).

Moreover, defendant would have been subject to penalty had he made false statements on his affidavit of indigency. *See id.* § 7A-456(a)–(b) (stating that making a false statement "under oath or affirmation in regard to the question of [ ] indigency constitutes a Class I felony," and requiring "[a] judicial official making the determination of indigency" to notify the applicant of the penalty); *see also State v. Denny*, 361 N.C. 662, 667–68, 652 S.E.2d 212, 215 (2007) (upholding defendant's perjury conviction for making a false statement on his affidavit of indigency concerning his real estate assets). Defendant's own affidavit even states that he is making statements concerning his indigency "[u]nder penalty of perjury." These facts and circumstances demonstrate that defendant's statement of his birthdate on his affidavit was testimonial.

That defendant's statement was testimonial is not the end of the analysis; in order to implicate his Fifth Amendment right, it must also have been compelled. *Doe*, 487 U.S. at 212, 108 S. Ct. at 2348, 101 L. Ed. 2d at 198 (". . . the privilege may be asserted only to resist *compelled* explicit or implicit disclosures of incriminating information." (emphasis added))). Here, like in *Simmons*, although defendant's decision to disclose his date of birth on his affidavit of indigency could be seen as voluntary "[a]s an abstract matter," *Simmons*, 390 U.S. at 393, 88 S. Ct. at 976, 19 L. Ed. 2d at 1259, we cannot overlook the "undeniable tension [that] is created" by the fact that defendant needed to disclose his date of birth in order to exercise his right to the assistance of counsel, which is a "'benefit' . . . afforded by another provision of

the Bill of Rights," *id.* at 394, 88 S. Ct. at 976, 19 L. Ed. 2d at 1259. In such an instance, the "reasoning . . . that the defendant has a *choice*: he may refuse to testify and give up the benefit," is ultimately unpersuasive. *See id.* at 394, 88 S. Ct. at 976, 19 L. Ed. 2d at 1259 (emphasis added). Therefore, defendant's statement of his birthdate on his affidavit of indigency was a compelled, testimonial statement that triggered his Fifth Amendment privilege against compulsory self-incrimination.

Accordingly, by allowing defendant's affidavit of indigency to be admitted into evidence here, the trial court committed constitutional error by "requir[ing] [defendant] to surrender one constitutional right in order to assert another." *White*, 340 N.C. at 274, 457 S.E.2d at 847 (citing *Simmons*, 390 U.S. at 394, 88 S. Ct. at 976, 19 L. Ed. 2d at 1259). Like in *Simmons* where defendant "was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination," here defendant "was obliged either to give up" his right, as an indigent, to the assistance of counsel under the Sixth Amendment, "or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination." *Simmons*, 390 U.S. at 394, 88 S. Ct. at 976, 19 L. Ed. 2d at 1259.

The State's argument to the contrary that this case is governed by our prior decision in *State v. Banks*, 322 N.C. 753, 370 S.E.2d 398 (1988), is unpersuasive. In *Banks*, a police deputy was allowed to testify at trial that the defendant told the deputy that his birthdate was "8 May 1956" as the deputy was "booking" defendant.

322 N.C. at 758, 370 S.E.2d at 402. In that case, the defendant challenged the deputy's testimony on the ground that "evidence of his age was obtained in violation of his privilege against compulsory self-incrimination."[7] *Id.* at 758, 370 S.E.2d at 402. In reliance on our previous decision in *State v. Ladd*, we concluded that "the *Miranda* requirements are inapplicable to routine questions asked during the booking process unless such questions are designed to elicit incriminating information from a suspect." *Id.* at 760, 370 S.E.2d at 403; *see also id.* at 759, 370 S.E.2d at 402–403 (citing and quoting *State v. Ladd*, 308 N.C. 272, 286–87, 302 S.E.2d 164, 173 (1983)). We concluded that the deputy's questioning defendant as to his birthdate during the booking procedure was not "designed to elicit incriminating information from" defendant because the deputy was asking for "certain routine information" that was "regularly obtain[ed]," including "the suspect's name, date of birth, age, sex, race, social security number and address." *Id.* at 760, 370 S.E.2d at 403. Further, we concluded that the *Ladd* exception applied because the deputy "was not investigating any crime nor did he interrogate defendant for the purpose of eliciting incriminating information." *Id.* at 760, 370 S.E.2d at 403. As such, we ultimately concluded "that defendant's Fifth Amendment privilege against compulsory self-incrimination was not violated," notwithstanding defendant's argument that his "age [wa]s an essential

---

[7] The defendant in *Banks* also challenged the admission of the deputy's testimony because the State failed to disclose the statement during voluntary discovery. *Banks*, 322 N.C. at 758, 370 S.E.2d at 402.

element of the crimes for which he was being booked." *Id.* at 760, 370 S.E.2d at 403.

Our decision in *Banks* is inapplicable here because *Banks* dealt with a wholly separate basis for concluding that a defendant was compelled to give incriminating testimony. Here, we are not concerned with—and we make no conclusions in regard to—whether defendant was compelled to state his birthdate on his affidavit of indigency because he was being interrogated while under police custody as was the case in *Miranda v. Arizona*, 384 U.S. 436, 439, 86 S. Ct. 1602, 1609, 16 L. Ed. 2d 694, 704 (1966). Rather, defendant was compelled to state his birthdate on his affidavit of indigency because doing so was necessary to obtain a "benefit . . . afforded by another provision of the Bill of Rights." *Simmons*, 390 U.S. at 394, 88 S. Ct. at 976, 19 L. Ed. 2d at 1259. Therefore, the issue of whether the *Ladd* exception to *Miranda* would hypothetically apply here had defendant been subject to interrogation in police custody is irrelevant. *See Banks*, 322 N.C. at 760, 370 S.E.2d at 403 (disagreeing with defendant's argument "the testimony would not be admissible under the *Ladd* exception to *Miranda* requirements"). The compulsion that defendant encountered here, standing alone, is "intolerable." *Simmons*, 390 U.S. at 394, 88 S. Ct. at 976, 19 L. Ed. 2d at 1259.

## B. <u>Whether the Court of Appeals erred in concluding that the trial court's error was not harmless beyond a reasonable doubt.</u>

In his brief, defendant argues that forcing a defendant to choose between constitutional rights under *Simmons* and *White* constitutes reversible error.

"A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C.G.S. § 15A-1443(b) (2017). A constitutional error is not harmless beyond a reasonable doubt if "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Soyars*, 332 N.C. 47, 58, 418 S.E.2d 480, 487 (1992) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710 (1967)).

Here, the Court of Appeals concluded that the error in admitting defendant's affidavit of indigency was not harmless beyond a reasonable doubt because "Julie's testimony about Defendant's date of birth was incorrect," and "as evinced through cross-examination, Julie did not testify regarding a basis for her knowledge. Julie had never seen an official document showing Defendant's correct date of birth or age." *Diaz*, 808 S.E.2d at 457. The State now argues that the admission of defendant's affidavit of indigency was harmless beyond a reasonable doubt because: (1) "there is no requirement that a person see another's driver[']s license, birth certificate or passport to know the other person's age;" (2) the victim—whose testimony as to defendant's age received no objection at trial—"was intimately involved with the defendant for an extended period of time" and the jury was "highly likely" to believe such testimony; and (3) even though there was a six-day discrepancy between defendant's actual birthdate and the date that the victim testified to, the discrepancy

was harmless because the victim's testimony still established that defendant was born in November 1995.

Here we conclude that there is no "reasonable possibility" that the admission of defendant's affidavit of indigency "might have contributed to the conviction." *Soyars*, 332 N.C. at 58, 418 S.E.2d at 487 (quoting *Chapman*, 386 U.S. at 24, 87 S. Ct. at 828, 17 L. Ed. 2d at 710).

Before analyzing the evidence of defendant's age offered at trial, we must clarify, under North Carolina law: (1) what it means for the State to be required to prove a defendant's age; and (2) what evidence is competent to prove a defendant's age. First, "when the fact that [a defendant] was at the time in question over a certain age is one of the essential elements to be proved by the State," the State "must prove only that [the defendant] was at the time of the offense charged over [that age]." *Banks*, 322 N.C. at 758, 370 S.E.2d at 402 (quoting *State v. Gray*, 292 N.C. 270, 287, 233 S.E.2d 905, 916 (1977)). Therefore, "the exact age of the defendant is not in issue, nor need the state prove it." *Id.* at 758, 370 S.E.2d at 402 (quoting *Gray*, 292 N.C. at 287, 233 S.E.2d at 916). This rule, however, should not be "extend[ed] to any case, criminal or civil, where the *exact* age of someone must be proved." *Id.* at 758, 370 S.E.2d at 402 (emphasis in the original) (quoting *Gray*, 292 N.C. at 287, 233 S.E.2d at 916).

Here, neither defendant's charge of abducting a child nor his charge of statutory rape required the State to prove his exact age. Specifically, with regard to

the abduction of a child charge, the State only had to prove that defendant was at least four years older than Julie when she was a minor. *See* N.C.G.S. § 14-41(a). With regard to defendant's statutory rape charge, the State only had to prove that defendant was "more than four but less than six years older than" Julie when she was "13, 14, or 15 years old." *Id.* § 14-27.7A(b). As such, the State was never required to prove defendant's exact age. Therefore, the Court of Appeals' reasoning that the error in admitting defendant's affidavit of indigency was not harmless beyond a reasonable doubt because "Julie's testimony about Defendant's date of birth was incorrect," is a red-herring. *Diaz*, 808 S.E.2d at 457.

Having clarified what the State was required to prove at trial, we now turn to the issue of what evidence is competent to establish the age of a person. The Court of Appeals seems to have concluded that the admission of defendant's affidavit of indigency was not harmless beyond a reasonable doubt on account of the fact that Julie's testimony as to defendant's age could not have been competent because she never saw "an official document showing Defendant's correct date of birth or age." *See id.* at 457. The conclusion that Julie's testimony as to defendant's age was incompetent unless she saw official documentation showing defendant's date of birth is without legal support. Specifically, under Rule 701 of the North Carolina Rules of Evidence, a lay witness may provide testimony as to that witness's "opinions or inferences" which are: (1) "rationally based on the perception of the witness"; and (2) "helpful to a clear understanding of [the witness's] testimony or the determination of

a fact in issue." N.C. R. Evid. 701. In *Banks*, we determined that this rule allowed a police deputy to testify as to the defendant's age based upon the deputy's "ample opportunity to observe defendant both during the booking process and while they were together in the courtroom." *Banks*, 322 N.C. at 757, 370 S.E.2d at 401. We concluded that the deputy's opinion testimony as to the defendant's age comported with the requirements of Rule 701 of the North Carolina Rules of Evidence because it "was rationally based on his perception of defendant, and it was helpful to the jury in determining the age requirements of the crimes charged." *Banks*, 322 N.C. at 757, 370 S.E.2d at 401.

Here, there is an even stronger argument than in *Banks* that Julie's testimony "was rationally based on her perception[s]" of defendant. N.C. R. Evid. 701. Specifically, Julie attended the same high school as defendant where, at the time, she was a member of the freshman class, and he was a member of the senior class. They engaged in an intimate relationship that lasted for several months, including a few weeks during which they "basically start[ed] a new life" together in Oklahoma. As a result, Julie had even more of an opportunity to form a rational opinion as to defendant's age than the deputy in *Banks* who only observed the defendant in that case for the duration of the booking process and while the defendant was in the courtroom. *Banks*, 322 N.C. at 757, 370 S.E.2d at 401. Further, Julie's testimony was helpful to "the determination of a fact in issue" here, that fact being defendant's age. N.C. R. Evid. 701. Therefore, the Court of Appeals' apparent conclusion that Julie's

opinion as to defendant's age was somehow incompetent is unfounded. *See Diaz*, 808 S.E.2d at 457.

Having clarified that the State was not required to prove defendant's date of birth at trial, and that Julie's opinion testimony was competent as to the issue of defendant's age, we now turn to analyzing the evidence admitted at trial as to defendant's age in order to determine whether the admission of his affidavit of indigency was harmless beyond a reasonable doubt. We conclude that there is no "reasonable possibility that [defendant's affidavit of indigency] might have contributed to [his] conviction[s]," *Soyars*, 332 N.C. at 58, 418 S.E.2d at 487 (quoting *Chapman*, 386 U.S. at 24, 87 S. Ct. at 828, 17 L. Ed. 2d at 710). Specifically, although Julie did incorrectly testify as to the day that defendant was born, she did correctly testify that he was born in November of 1995. This evidence established that defendant was nineteen years old at all times relevant to the abduction of a child and statutory rape charges.[8] Julie's testimony that her birth date was 21 July 2000 established that she was fourteen years old at all times relevant to the charges against defendant. As such, Julie's testimony provided evidence that supported defendant's guilt. *See* N.C.G.S. § 14-41(a) (requiring that a defendant be at least four years older than the abducted minor); *id*. § 14-27.7A(b) (requiring that a defendant

---

[8] Per defendant's indictments, the relevant date for the abduction of a child charge is "on or about" 14 April 2015. The relevant dates for the statutory rape charges are: (1) "on or about" 14 April 2015; (2) between 1 March 2015 and 15 March 2015; and (3) between 16 March 2015 and 31 March 2015.

be "more than four but less than six years older than" a victim who is either "13, 14, or 15 years old"). Given that Julie's testimony resulted from her intimate relationship with defendant that lasted several months, and involved them "basically starting a new life" together, such testimony constituted strong and essentially uncontradicted evidence of defendant's age, and there is no "reasonable possibility" that the jury would have unduly relied on defendant's affidavit of indigency to convict defendant. *Soyars*, 332 N.C. at 58, 418 S.E.2d at 487 (quoting *Chapman*, 386 U.S. at 24, 87 S. Ct. at 828, 17 L. Ed. 2d at 710).

Accordingly, we reverse the conclusion of the Court of Appeals that the trial court's error in admitting defendant's affidavit of indigency was not harmless beyond a reasonable doubt. *Diaz*, 808 S.E.2d at 457.

## III.    Conclusion

Because we conclude that the trial court's constitutional error in admitting defendant's affidavit of indigency into evidence was harmless beyond a reasonable doubt, we affirm in part and reverse in part the ruling of the Court of Appeals.

AFFIRMED IN PART; REVERSED IN PART.